UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ADAN ABREU,       :       ECF CASE

           Plaintiff,       :       Docket No.: 15-CV-58 (LDW)(SIL)

      v.       :

VERIZON NEW YORK, INC.; DAVID LUCAS,    :
THOMAS BOLGER, and RICHARD FRANCIS,   :

           Defendants.      ::

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>DEFENDANTS' PROPOSED JURY CHARGE</u>

Defendants Verizon New York, Inc. ("Verizon"), David Lucas, Thomas Bolger, and

Richard Francis, (collectively, "Defendants") hereby submit their proposed list of preliminary

and final jury instructions.  Defendants further reserve the right to amend or supplement these

proposed jury instructions, withdraw any of the proposed jury instructions, and/or object to any

of the below proposed jury instructions for any reason and at any time prior to charging the jury.

Dated: New York, New York       Respectfully submitted,
        July 5, 2017

                               SEYFARTH SHAW LLP

                      By:   */s/ Paul H. Galligan*                  
                         Paul H. Galligan
                         Howard M. Wexler
                         Meredith-Anne M. Berger
                         620 Eighth Avenue, 32nd Floor
                         New York, NY 10018-1405
                         Tel.:  (212) 218-5500
                         Fax:  (212) 218-5526
                         pgalligan@seyfarth.com
                         hwexler@seyfarth.com
                         mberger@seyfarth.com

                         *Attorneys for Defendants*

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION A

<u>Nature of Case</u>

Members of the jury, we are about to begin the trial of the case about which you heard some details of during the process of jury selection.  Before the trial begins, however, there are certain instructions you should have in order to better understand what will be presented to you and how you should conduct yourself during the trial.

The person who brings a lawsuit is called the plaintiff.  The plaintiff in this case is Adan Abreu.  Mr. Abreu is a retired Verizon Field Technician.  The persons against whom the suit is brought are called the defendants.  The defendants in this case are Verizon New York Inc. ("Verizon"), which provides voice, data, and video products and services over wireless, broadband, and global IP networks to business and residential customers, two current Verizon managers, David Lucas and Thomas Bolger, and a retired Verizon manager, Richard Francis.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.01 (6th ed. 2016).

2

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION B

<u>Description of Plaintiff's Claims</u>

In this action, Mr. Abreu has alleged that Defendants violated Title VII of the 1964 Civil Rights Act, called simply "Title VII," 42 U.S.C. § 1981, known as "Section 1981," and the New York State Human Rights Law based on his race/ethnicity by removing him from his Fire Island assignment after he was seen on two occasions by managers without his Verizon-issued shirt and Mr. Abreu also alleges that he was retaliated against for filing an internal complaint about his removal.  He has also alleged that he was constructively discharged.  Mr. Abreu further alleges that he was subjected to a hostile work environment based on his race/ethnicity.

Defendants deny all of these allegations and contend that Mr. Abreu was removed from his Fire Island assignment because he failed to follow Verizon's workplace attire policy, and not for any discriminatory reasons.  Defendants also assert that Mr. Abreu was not retaliated against because he only complained *after* his removal.  Defendants contend that Abreu did not suffer from a work environment that was hostile to his race/ethnicity, which he never complained about to Verizon.  Verizon promptly investigated his internal complaint of discrimination following his removal from Fire Island.  Defendants also contend that Mr. Abreu was not constructively discharged, as he voluntarily retired in December 2014, over two years after he was removed from Fire Island and after he accepted a monetary incentive of over $70,000.00 to retire.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____

**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.03 (6th ed. 2016).

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION C

Order of Trial

This case will proceed in the following order:

First, the plaintiff may make an opening statement outlining his case.  Defendants may also make an opening statement, or may defer the making of an opening statement until the conclusion of plaintiff's case.  No party is required to make an opening statement.  What is said in opening statements is not evidence, but is simply designed to provide you with an introduction as to the evidence which the party making the statement intends to offer during the trial.

Second, plaintiff will introduce evidence in support of his claims.  At the conclusion of plaintiff's case, the defendants may introduce evidence.  Defendants, however, are not obliged to introduce any evidence or to call any witnesses.  If defendants introduce evidence, Plaintiff may then introduce rebuttal evidence.

Third, plaintiff and defendants may present closing arguments as to what they contend the evidence has shown and the inferences which they contend you should draw from the evidence. What is said in a closing argument, just like what is said in an opening statement, is not evidence.  The arguments are designed to present to you the contentions of the parties based on the evidence introduced.  Plaintiff has the right to open and to close the argument.

Fourth, I will instruct you on the law which you are to apply in reaching your verdict.  It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them based on the evidence in the case.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

4

MODIFIED: _____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.02 (6th ed. 2016).

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION D

Objections

During the course of the trial, it may happen that counsel for plaintiff, or counsel for defendants, may ask a question or offer an exhibit into evidence, and the other party may object to the question or the offer of an exhibit into evidence. When an objection is made, it is my duty to rule on that objection in accordance with the law. If I overrule the objection, the question may be answered or the exhibit received into evidence. If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence. In either case, the mere fact that plaintiff's or defendants' counsel has made an objection should not influence you in any way.

By overruling an objection and allowing evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As I have stated before, you, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence.

On the other hand, if I sustain an objection to a question or the admission of an exhibit, you must ignore that question and must not guess what the answer to the question might have been. In addition, you must not consider evidence that I have ordered stricken from the record.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** 3 O'Malley, Grenig & Lee, Federal Jury Practice & Instructions, § 101.49 (6th ed. 2016).

6

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION E

<u>What Is Not Evidence</u>

I instruct you that in deciding the facts of this case, you are not to consider any of the following as evidence:  Statements and arguments of counsel for plaintiff; statements and arguments of counsel for defendants; questions and objections of counsel for plaintiff or defendants; any testimony that I instruct you to disregard, and anything that you may see or hear when the Court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.


_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.44 (6th ed. 2016).

7

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION F

<u>Jury Conduct</u>

You will not be required to remain together while the Court is in recess. It is important, however, that you obey the following instructions during the recesses of the Court:

1.      Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.      Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

3.      Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

4.      During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5.      It is unlikely that this case will be covered by the media or receive publicity. Nonetheless, I instruct you that you are not to read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6.      Do not do any research, such as checking dictionaries or reference books, or make any investigation about the case on your own.

7.      Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8.      If you need to tell me something, simply give a signed note to the marshal to give to me.


_____

UNITED STATES DISTRICT JUDGE

GIVEN:      _____

REFUSED:      _____

MODIFIED:      _____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.11 (6th ed. 2016).

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION G

<u>Function of Court and Jury</u>

After closing arguments are concluded, I will instruct you on the rules of law that are applicable to the claims in this case and you will then retire for your deliberations.  Your function as jurors is to determine what the facts are and apply the rules of law that I give to you to the facts as you find them to be.  The conclusion that you reach will be your verdict.  You will determine what the facts are from all the testimony that you hear and the exhibits that are submitted.  You are the sole and exclusive judges of the facts.  In that field, neither I nor anyone else may invade your province.  I shall endeavor to preside impartially and not to express any opinion concerning the facts.  Any views of mine on the facts would, in any event, be totally irrelevant.  On the other hand, and with equal emphasis, I instruct you that you are bound to accept the rules of law that I will give you whether you agree with them or not.


_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____


**Source:** 1A New York Pattern Jury Instructions 1:6 (3rd ed. 2017).

DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTION H

<u>Weighing Testimony</u>

The law does not require you to accept all of the evidence I shall admit, even though that evidence may be competent.  In determining what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses, and determine the degree of weight you choose to give to her or his testimony.  The testimony of a witness may fail to conform to the facts as they occurred because he or she is intentionally telling a falsehood, because he or she did not accurately see or hear that about which he or she testifies, because his or her recollection of the event is faulty, or because he or she has not expressed himself or herself clearly in giving his or her testimony.

There is no magical formula by which one may evaluate testimony.  You bring with you to this courtroom all of the experience and background of your lives.  In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others.  The same tests that you use in your everyday dealings are the tests which you apply in your deliberations.  The interest or lack of interest of any witness in the outcome of this case, the bias or prejudice of a witness, if there be any, the appearance or manner in which the witness gives his testimony on the stand, the opportunity that the witness had to observe the facts to which he testifies, the probability or improbability of the witness' testimony when viewed in light of all of the other evidence in the case, are all items for you to consider in determining the weight, if any, you will assign to that witness' testimony.

If such considerations make it appear that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together.  If, however, that is not possible, you will then have to determine which of the conflicting versions you will accept.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** 1A New York Pattern Jury Instructions 1:8 (3rd ed. 2017).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 1

<u>Province of the Court and Jury</u>

Now that you have heard the evidence and the arguments of the parties, it becomes my duty to instruct you as to the applicable law.

It is your duty as jurors to follow the law, as I will state it, and to apply that law to the facts as you find them from the evidence in this case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  You are not to be concerned with the wisdom of any rule of law stated by me, or whether you agree or disagree with any rule of law stated by me.  You must follow and apply the law.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be governed by sympathy, prejudice, or public opinion.  The parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.


_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 103.01 (6th ed. 2016).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 2

<u>Duty to Deliberate</u>

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregarding individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.


_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 106.01 (6th ed. 2016).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 3

<u>All Persons Equal Before The Law</u>

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  This action is between one individual plaintiff, Mr. Abreu, and the defendants, Verizon, Mr. Francis, Mr. Bolger, and Mr. Lucas.  Do not let bias, prejudice or sympathy play any part in your deliberations.  All persons are equal before the law and must be treated as equals in a court of justice.

In this case one of the defendants, Verizon, is a corporation.  The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

_____

UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, §§ 103.11, 103.12 (6th ed. 2016); 4-72.1 <u>Modern Federal Jury Instructions-Civil</u>, P 72.01 (Matthew Bender).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 4

<u>Credibility of Witnesses</u>

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 105.01 (6th ed. 2016).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 5

Burden of Proof and Preponderance of the Evidence - General Rule

The burden is on the plaintiff to prove every essential element of his claims by a "preponderance of the evidence."

A "preponderance of the evidence" simply means evidence that persuades you that plaintiff's claim is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  If the proof should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence, you should find for the defendants as to that claim.

_____

UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____

**Source:** McNamara and Southerland, Federal Employment Jury Instructions, §§ 3:377, 5:155.10 (13th rev. 2014); 3 O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions, § 104.01 (6th ed. 2016).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 6

<u>Disparate Treatment</u>

Mr. Abreu has alleged that defendants discriminated against him based on his race by reassigning him from Fire Island to the mainland of Long Island, and in refusing to allow him to return to Fire Island following his removal.  Plaintiff asserts his claims against Verizon under Title VII, 42 U.S.C. § 1981, and the New York State Human Rights Law.  Verizon denies Mr. Abreu's allegations.

To establish his claim for race discrimination, Mr. Abreu must convince you by a preponderance of the evidence as to each of the following elements:

(1) he belonged to a protected class;

(2) he was qualified for the position he sought or held;

(3) he suffered an adverse employment action; and

(4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

At all times, the burden of proof remains with Mr. Abreu to prove that he was the victim of intentional race discrimination.  Verizon does not have the burden of proving that it did not discriminate against the Plaintiff.  If Mr. Abreu fails to prove each of these elements by a preponderance of the evidence, then you must return a verdict for Verizon on plaintiff's disparate treatment claim.

If you find that Mr. Abreu has established all the elements of his claims, you must then consider whether Verizon had legitimate, nondiscriminatory business reasons for the decisions it made with regard to Mr. Abreu.  During the trial, Verizon presented evidence of legitimate, nondiscriminatory business reasons for removing Plaintiff from Fire Island because he failed to comply with Verizon's workplace attire policy.  Further, defendants have shown that Plaintiff

19

had no interest in working overtime following his removal, and that the failure to reassign plaintiff back to Fire Island was not due to discriminatory reasons, but rather, because he previously failed to comply with Verizon's established work rules and policies while working there.

The plaintiff has argued that Verizon's stated reasons for its actions are nothing more than a pretext for discriminating him based on his race.  Mr. Abreu has the burden to prove by a preponderance of the evidence that each reason given by Verizon is not the true reason for its decision, but is merely a pretext for intentional discrimination based on his race.  In other words, it is not enough that Mr. Abreu prove that the reasons were not true; he must also prove by a preponderance of the evidence that his race was the determinative or motivating factor in each of the employment decisions.  A "determinative factor" is a factor that made a difference in the decision in question.

In the end, if Mr. Abreu has not proved by a preponderance of the evidence that his race was a determinative factor in any action taken by the defendants, then you must return a verdict for defendants, and you do not need to consider Mr. Abreu's disparate treatment claim any further.


_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____


**Source:** St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (burden shifting framework for disparate treatment claims under Title VII); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.

248, 253-54 (1981) (same); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973) (same); <u>Brown v. City of Syracuse</u>, 673 F.3d 141, 150 (2d Cir. 2012) (analyzing Title VII claims under burden-shifting framework set forth in <u>McDonnell Douglas</u>); <u>Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP</u>, 332 F. Supp. 2d 592, 595–96 (S.D.N.Y. 2004) ("In order to establish a claim under § 1981, a plaintiff must allege facts, which if proven to be true, would establish the following three elements: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of his or her race; and (3) that the defendant discriminated in connection with one of the statute's enumerated activities.").

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 7

<u>Disparate Treatment - Similarly Situated Employees</u>

During the trial, Mr. Abreu attempted to demonstrate that discrimination played a role in the way defendants treated him by suggesting that individuals who were similarly-situated to him, and were Caucasian, were treated more favorably than he was.  To be considered similarly-situated, however, Mr. Abreu must establish that the individuals he identifies, and seeks to compare himself with, held the same or a similar position as him, and engaged in the same conduct as him.  There must be no differentiating or mitigating circumstances that would distinguish that individual's conduct or defendants' treatment or discipline of that individual.  You may not consider evidence that other individuals who were Caucasian were treated more favorably than Mr. Abreu unless they are considered similarly-situated.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** <u>Shumway v. United Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997) ("To demonstrate that similarly situated males were treated differently, Shumway has to show that these males engaged in comparable conduct. In Shumway's case, her misconduct included a long term relationship, harassing behavior and lying."); <u>Gibbs v. NYS Dept. of Taxation and Fin.</u>, No. 04-cv-905, 2009 WL 754307, at *7 (E.D.N.Y. Mar. 20, 2009) (Plaintiff must identify comparators or racially motivated comments regarding plaintiff or plaintiff's protected group in order to show inference of discrimination).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 8

<u>Hostile Work Environment Under Title VII</u>

Mr. Abreu has alleged that he was subjected to a hostile work environment based on his race, in violation of Title VII and 42 U.S.C. § 1981.

To establish a hostile work environment claim, Mr. Abreu must convince you by a preponderance of the evidence that his workplace was permeated with discriminatory intimidation, ridicule, and insult based on his race that was sufficiently severe or pervasive to alter the conditions of his employment and create a hostile or abusive work environment.

In determining whether a hostile work environment existed, you must consider the evidence from the perspective of a reasonable person. This is an objective standard and requires you to look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Instead, you must consider the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological well-being of a reasonable person.

In addition, Mr. Abreu must convince you by a preponderance of the evidence that he subjectively perceived his work environment to be abusive.

Conduct that only amounts to ordinary socializing in the workplace such as occasional horseplay, sporadic or occasional use of abusive language, race related jokes, and occasional teasing, does not constitute an abusive or hostile work environment. Instead, the conduct must be extreme and the harassment must occur with such a degree of regularity as to be termed pervasive and amounts to a material change in the terms and conditions of the victim's employment.

_____

UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23 (1993) (setting forth *prima facie* case and analytical framework); Zacharowicz v. Nassau Health Care Corp., 177 F. App'x 152, 155 (2d Cir. 2006) (quoting Harris, 510 U.S. at 21) (plaintiff must "proffer evidence that her workplace 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"); Meritor Savings Bank v. Vinson, 477 U.S. 57, 65 (1986); Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) ("Proving the existence of a hostile work environment involves showing both objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.") (internal quotations and citations omitted); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (isolated remarks or occasional episodes of harassment are insufficient to establish an actionable hostile work environment claim; rather, the incidents of harassment must occur with such a degree of regularity as to be termed pervasive); Payne v. Brinks, Inc., 517 F. Supp. 2d 653, 659-60 (W.D.N.Y. 2007) (where Plaintiff "testified that she had 'loved' her job at Brink's," the court held that Plaintiff "failed to establish a prima facie case of discrimination in the form of a hostile work environment, and that claim must be dismissed").

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 9

Hostile Work Environment Under Title VII, 42 U.S.C. § 1981, and the New York State Human Rights Law

Mr. Abreu claims that he was subjected to a hostile work environment based on his race. I will now explain to you what Mr. Abreu must prove, by a preponderance of the credible evidence, in order to prove his claim of a hostile work environment.

To establish a hostile work environment based on race, Mr. Abreu must prove, by a preponderance of the credible evidence each of the following elements:

(1)    that he was intentionally subjected to unwelcome conduct because of his race; and

(2)    that the conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and plaintiff in fact did perceive it to be so; and

(3)    that the conduct was sufficiently severe or pervasive so as to alter the conditions of Mr. Abreu's employment and create an abusive working environment (I will provide you with more information regarding this severe or pervasive standard shortly); and

(4)    Mr. Abreu suffered damages as a result of the harassing conduct; and

(5)    there is a basis for imputing the conduct to Verizon.

If you find that Mr. Abreu has failed to prove any of these elements by a preponderance of the credible evidence, you must find in favor of Verizon regarding his hostile work environment claim.

25

_____
UNITED STATES DISTRICT JUDGE

GIVEN:        _____

REFUSED:    _____

MODIFIED:  _____

**Sources:** Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993); Leifer v. New York State Div. of Parole, 391 F. App'x 32, 35-37 (2d Cir. 2010); Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004); Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2001); Snell v. Suffolk Cnty., 782 F.2d 1094, 1103-04 (2d Cir. 1992); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 310-311 (2004); Richardson v. New York State, 180 F.3d 426, 436 (2d Cir. 1999); Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 693-94 (S.D.N.Y. 2011); Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 19 n.4 (2d Cir. 2014) ("The same standards apply to the plaintiffs' hostile environment claims arising under the NYSHRL, and to their claims arising under 42 U.S.C. § 1981.") (internal citations omitted)

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 10

<u>Subjectively and Objectively Offensive Standard for Hostile Work Environment</u>

I presented earlier the standard Mr. Abreu must meet to establish his hostile work environment claim. One element of this standard is that Mr. Abreu must show, by a preponderance of the credible evidence, that the harassment was both objectively and subjectively offensive: that means two things, first, that Mr. Abreu in fact felt that the work environment was hostile or abusive and, second, that a reasonable person would find it hostile or abusive.

In other words, the environment in question is to be judged by both an objective and subjective standard. It is not enough for you to find that Mr. Abreu himself believed that he was being subjected to a hostile work environment. You must also find that a reasonable person of the same race as Mr. Abreu would also have found the working conditions to constitute a hostile work environment. In other words, it is not enough that you find that Mr. Abreu felt subjectively intimidated, you must also find that any reasonable person in Mr. Abreu's position would have felt that the workplace was an environment permeated by discriminatory insult and ridicule.

_____

UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Sources:** <u>Harris v. Forklift Sys., Inc.,</u> 510 U.S. 17, 21 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.")  Accord <u>Feingold v. New York</u>, 366 F.3d 138, 149-50 (2d Cir. 2004); <u>Saqib v. Stein Devisser & Mintz, P.C.</u>, No. 07 CV 3052, 2009 WL 3171903, at *3 (E.D.N.Y. Sept. 30, 2009) <u>aff'd sub nom.</u> <u>Saqib v. Stein deVisser & Mintz, PC</u>, No. 09-4624-CV, 2010 WL 2382253 (2d Cir. June 15, 2010); <u>Faison v. Leonard St., LLC</u>, No. 08 CIV. 2192(PKC), 2009 WL 636724, at *3 (S.D.N.Y. Mar. 9, 2009).

28

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 11

Severe or Pervasive Standard for Hostile Work Environment

I presented earlier the standard Mr. Abreu must meet to establish his hostile work environment claim.  One element of this standard is that Mr. Abreu must show, by a preponderance of the credible evidence, that the hostile conduct at issue was severe or pervasive. I will now provide you with more information regarding this severe or pervasive standard.

Mr. Abreu must prove, by a preponderance of the credible evidence, that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the terms and conditions of his employment.  Isolated acts or episodic incidents, unless very serious, do not meet the threshold of severity or pervasiveness.  Instead of sporadic incidents, there must be a steady barrage of opprobrious conduct based on Mr. Abreu's race.  Although no single factor is decisive, in deciding whether conduct is severe or pervasive, you should consider the following factors, in addition to any other relevant factors:

(1)     the frequency of the conduct. In this regard, the incidents Mr. Abreu complains of must be repeated and continuous, isolated acts or occasional episodes are not enough to establish a violation;

(2)     the severity of the conduct;

(3)     whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and

(4)     whether the conduct interfered with the employee's work performance.

---------------------------------------------

UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

29

MODIFIED:   _____


**Sources:** <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80-81 (1998); <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993); <u>Leifer v. New York State Div. of Parole</u>, 391 F. App'x 32, 35-37 (2d Cir. 2010); <u>Feingold v. New York</u>, 366 F.3d 138, 149-50 (2d Cir. 2004); <u>Alfano v. Costello</u>, 294 F.3d 365, 373-74 (2d Cir. 2001); <u>Snell v. Suffolk Cnty.</u>, 782 F.2d 1094, 1103-04 (2d Cir. 1986) (plaintiff cannot rely solely on casual comments or trivial events and sporadic conversation); <u>Forrest v. Jewish Guild for the Blind</u>, 3 N.Y.3d 295, 310-311 (2004); <u>Richardson v. New York State</u>, 180 F.3d 426, 436 (1999); <u>Lopez v. S.B. Thomas Inc.</u>, 831 F.2d 1184, 1189 (2d Cir. 1987) (several incidents over short period of about five months insufficient); <u>Price v. Cushman & Wakefield, Inc.</u>, 808 F. Supp. 2d 670, 693-94 (S.D.N.Y. 2011).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 12

<u>Retaliation</u>

Mr. Abreu asserts a retaliation claim under Title VII, 42 U.S.C. § 1981, and the New York State Human Rights Law.  Mr. Abreu alleges that Verizon retaliated against him because he filed a complaint with Verizon subsequent to his removal from Fire Island.  According to Mr. Abreu, Verizon retaliated by removing him from Fire Island and failing to reassign him to Fire Island after his removal.  Verizon denies Mr. Abreu's claim.

To prevail on the retaliation claim, Mr. Abreu must prove all of the following by a preponderance of the evidence:

First, he must prove that he engaged in an activity protected under law.

Second, he must prove that he was subjected to a materially adverse employment action at the time, or after, the protected activity took place.

Third, he must prove that there was a causal connection between the protected activity and the adverse employment action.

If Mr. Abreu fails to prove any of these elements by a preponderance of the evidence, then you must return a verdict in favor of defendants, and you do not need to consider these claims any further.

Concerning the first element, the law defines "protected activity" as making a complaint of unlawful discrimination.  This means more than a generalized complaint about unfairness or a passing reference to one's protected status.  Mr. Abreu must have complained about unlawful discrimination.  For a complaint to be deemed protected activity, it must put the employer on notice that the plaintiff has engaged in protected activity.

Concerning the second element, whether a challenged action can be considered objectively "adverse" depends in part, upon whether the action would be likely to dissuade a reasonable worker from making or supporting a charge of discrimination.

Concerning the third element, that of causal connection, Mr. Abreu must show that he suffered the adverse employment action because he engaged in the "protected activity," and that those who made the challenged decisions were actually aware of his protected activity.

If you find that Mr. Abreu has established all three elements, then you must go on to consider whether he has proven that defendants intentionally retaliated against him. This means that Mr. Abreu must show by a preponderance of the evidence that his protected activity was a "but-for" cause of Verizon's alleged adverse action.

Verizon has given non-retaliatory reasons for its employment actions. Namely, that it reassigned Mr. Abreu to the mainland because he failed to comply with Verizon's workplace attire policy.

If you disbelieve Verizon's explanations for its conduct, then you may, but need not, find that Mr. Abreu has proved intentional retaliation. In determining whether Verizon's stated reasons for its actions were a pretext, or excuse, for retaliation, you may not question Verizon's business judgment. You cannot find intentional retaliation simply because you disagree with the business judgment of Verizon or believe it is harsh or unreasonable. You are not to consider Verizon's wisdom. However, you may consider whether Verizon's reason is merely a cover-up for retaliation.

Ultimately, you must decide whether Mr. Abreu has proven that his protected conduct was a determinative factor in Verizon's decision to reassign Mr. Abreu to the mainland. "Determinative factor" means that but for his protected conduct, his reassignment would not have occurred.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:      _____

REFUSED:    _____

MODIFIED:   _____


**Source:**  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 519 (1993); Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94-95 (2nd Cir. 2001) (setting for *prima facie* case); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (same); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 304-05 (2004) (*prima facie* case and framework under Title VII equally attributable to NYSHRL claims); Ferrante v. Am. Lung Ass'n, 90 N.Y.2d 623, 629 (1997) (same); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013); Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845-46 (2d Cir. 2013); Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 322 (E.D.N.Y. 2014) (considering race-based retaliation claims under 42 U.S.C. § 1981 and NYSHRL using same analysis).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 13

<u>Elements of Retaliation</u>

<u>Protected Activity</u>

Concerning the first element, the law defines a "protected activity" as making a complaint of unlawful discrimination.  This means more than a generalized complaint about unfairness or a passing reference to one's protected status.  Rather, Mr. Abreu must prove that he specifically complained about discrimination based on his race.  General complaints of unfair treatment, ordinary workplace issues, or unhappiness with management do not constitute an explicit complaint of illegal discrimination.  For a complaint to be deemed protected activity, it must put the employer on notice that the employee has engaged in protected activity.

<u>Employer Awareness</u>

Concerning the second element, Mr. Abreu must prove, by a preponderance of the evidence, that Verizon was aware of the protected activity.  In other words, that Verizon was aware of any complaints by Mr. Abreu concerning alleged discrimination based on race.

<u>Causal Connection</u>

Under federal law and the New York State Human Rights Law, Mr. Abreu must prove, by a preponderance of the evidence, that his complaint about unlawful discrimination was the "but for" cause of any adverse employment action at issue.  By "but for" cause, I mean that Verizon would have not taken the action that it did "but for" Mr. Abreu's protected activity.  Put another way, the "but for" cause means the determining factor behind Verizon's decision.

To show causal connection under the Federal and State laws, Mr. Abreu must also prove, by a preponderance of the evidence, that the person responsible for making the employment decision or action knew that a complaint about unlawful discrimination had been made or was

acting, explicitly or implicitly, upon the orders of a superior who had the requisite knowledge about the complaint of unlawful discrimination.

Pretext

If Verizon has stated a legitimate, non-discriminatory reason for its decision to reassign Mr. Abreu, then Mr. Abreu must prove, by a preponderance of the evidence, that the reason given by Verizon was not the true reason for its decision **and** that Mr. Abreu's purported complaints were the true cause of his reassignment.

Mr. Abreu's own subjective belief regarding Verizon's enforcement of workplace policies is not enough to meet his burden of proof.  Nor is it enough for Mr. Abreu to speculate or show a mere possibility that the reason given by Verizon was untrue or that the real reason for his reassignment was his purported complaint about illegal discrimination.  Rather, Mr. Abreu must produce affirmative evidence of retaliation.

A showing that Verizon's asserted reason for its decision was false may serve as evidence that Verizon retaliated against Mr. Abreu because of his purported complaints, or, in some cases, an employer's offer of a false or inaccurate reason may be a mask for unlawful discrimination.  Retaliation, however, does not lurk behind every inaccurate statement.  In short, even if you find that the reason offered by Verizon was false or incomplete, it would not necessarily mean that Mr. Abreu's purported complaint about illegal discrimination was causally related to the decision to remove him from Fire Island.

At all times, Mr. Abreu bears the burden of persuading you that his race was the "but for" cause of Verizon's decision to reassign Mr. Abreu to the mainland.  Verizon does not have the burden of establishing that its decision to reassign Mr. Abreu was sound or correct, or that it was actually motivated by the stated reason.  In determining whether Mr. Abreu's purported complaint was the reason for Verizon's decision to reassign Mr. Abreu, you must consider any

evidence of intent that may be available from the direct or circumstantial evidence that has been presented by both sides.

In considering whether Mr. Abreu has met his burden of proving his retaliation claim, you must keep in mind that Verizon was entitled to make any business judgment or decision it chose—however unfair, unwise, misguided, or unreasonable that judgment or decision may seem to you—so long as it did not retaliate against Mr. Abreu for his purported complaint.  You are not to decide whether, had you been his employer, you would have made the same decision. You are not to judge whether Verizon's decision to reassign Mr. Abreu employment was right or wrong from a management standpoint.  You may not second-guess the wisdom of Verizon's decision.  Verizon was entitled to make this decision for any reason, or even for no reason at all, so long as Mr. Abreu's purported discrimination complaint was not the "but for" cause of the decision complained of.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____

**Sources:** Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); Gorzynski v. Jetblue Airways Corp., 596 F.3d 93 (2d Cir. 2010); Henry v. Wyeth Pharm., Inc., 616 F.3d 134 (2d Cir. 2010); Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199 (2d Cir. 2006); Venezia v. Luxottica Retail N. Am. Inc., No. 13-cv-4467, 2015 WL 5692146 (S.D.N.Y. Sept. 28, 2015); Hamilton v. Bally of Switzerland, No. 03-cv-5685, 2005 WL 1162450, at *11-12 (S.D.N.Y. May 17, 2005).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 14

Retaliation - Temporal Proximity

Even if you find that Verizon took an adverse employment action against Mr. Abreu soon after his complaint of discrimination, timing alone, is not, by itself, a sufficient basis for you to find that Verizon unlawfully retaliated against Mr. Abreu for protected activity.  When a plaintiff relies solely on temporal proximity, in other words on the closeness in time, between their alleged protected activity and the employer's alleged adverse action, that is insufficient, standing alone, to prove retaliation.  If you find that Mr. Abreu relies entirely upon temporal proximity between his alleged protected activity and Verizon's adverse action to establish unlawful retaliation, you must find for Verizon, and you need not consider Mr. Abreu's retaliation claims any further.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext. . . . Indeed, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact."); Hicks v. Baines, 593 F.3d 159, 161-62, 165 (2d Cir. 2010); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 81 (2d Cir. 2001); Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 15

<u>Retaliation - Proof of Causation - Intervening Event</u>

An intervening event may negate any inference of causation that might otherwise flow from the temporal proximity between protected activity and adverse action.  During the course of the trial, Verizon introduced evidence that Mr. Abreu failed to follow the workplace attire policy. You may find that this intervening event negates any inference of causation that might otherwise attach to the time period between Mr. Abreu's protected activity and Verizon's adverse action.


_____

UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:**   <u>Uy v. Mount Sinai Hosp.</u>, No. 10 Civ. 5674, 2012 U.S. Dist. LEXIS 143308, at *19-20 (S.D.N.Y. Sept. 30, 2012) (citing <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 33 (2d Cir. 1998)) ("Even where temporal proximity might otherwise raise such an inference, an intervening event between the protected activity and the adverse employment action generally defeats such a[n] inference."); <u>Yarde v. Good Samaritan Hosp.</u>, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 16

<u>Business Judgments in Making Business Decisions</u>

There are, of course, many ways in which an employer might treat an employee in a matter that you might consider unfair or improper.  You should keep in mind that, in considering Mr. Abreu's claims, your focus should be on deciding whether Verizon's decision to remove Mr. Abreu from Fire Island was made for discriminatory reasons, and whether Verizon's retaliated against Mr. Abreu's because he filed a discrimination complaint.  Verizon does not have to show that they made business decisions that you agree with or that you would have made if you were in their position.  You might conclude that Verizon took certain actions that were unsound or that there was no business need for them to take certain actions.  But, unless Mr. Abreu can establish by a preponderance of the evidence that Verizon's removal of him from Fire Island was for discriminatory reasons or that Verizon retaliated against him because he made a discrimination complaint, then Mr. Abreu cannot prevail.  It is not your role to sit as a personnel committee, judging the fairness or soundness of Verizon's business decision.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source**: <u>Dister v. Cont'l Grp., Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988) (Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to discrimination); Todd J. McNamara & J. Alfred Southerland, <u>Federal Employment Jury Instructions</u> §§ 3:340; 5:690-700 (13th rev. 2014).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 17

<u>Individual Liability Under the New York State Human Rights Law - Richard Francis</u>

I will now instruct you about the standard for holding the individual defendant, Mr. Richard Francis, liable under the New York State Human Rights Law.  You may consider whether Mr. Francis is liable only if you have first determined that Verizon is liable for any claims asserted under the New York State Human Rights Law.  If you determine that Verizon is not liable for hostile work environment under the New York State Human Rights Law, for example, then you cannot find Mr. Francis liable for this claim.  Similarly, if you determine that Verizon is not liable for retaliation under the New York State Human Rights Law, then you cannot find Mr. Francis liable for this claim.

However, if you determine that Verizon is liable under the New York State Human Rights Law for discrimination, hostile work environment, retaliation, or constructive discharge, then Mr. Francis may be held liable only if Mr. Abreu proves by a preponderance of the evidence that Mr. Francis aided or abetted Verizon by actually participating in the conduct that gives rise to the claim.  To be individually liable as an aider or abettor, Mr. Francis must have shared the intent or purpose of the principal actor or actors at Verizon who engaged in the allegedly unlawful conduct, and Mr. Francis must have directly and purposefully participated in this conduct.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____

**Sources:** Feingold v. New York, 366 F.3d 138, 149-50, 157-58 (2d Cir. 2004); Drummond v. IPC Int'l, Inc., 400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005); Curto v. Med. Work Communications, Inc., 388 F. Supp. 2d 101, 108 (E.D.N.Y. 2005); Strauss v. NYS Dep't of Educ., 26 A.D.3d 67, 72-73, 805 N.Y.S.2d 704 (3d Dep't 2005); Graciani v. Patients Med., P.C., 2015 WL 5139199, at *24-25 (E.D.N.Y. Sept. 1, 2015); Robles v. Goddard Riverside Cmty. Ctr., No. 08-cv-4856, 2009 WL 1704627, at *3-4 (S.D.N.Y. June 17, 2009); Graciani, 2015 WL 5139199, at *24 ("Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose."); Robles, 2009 WL 1704627, at *3 ("to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful, participation.") (internal quotations and citations omitted); Feingold, 366 F.3d at 157 ("[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'") (internal citations omitted).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 18

<u>Individual Liability Under the New York State Human Rights Law - David Lucas</u>

I will now instruct you about the standard for holding the individual defendant, Mr. David Lucas, liable under the New York State Human Rights Law.  You may consider whether Mr. Lucas is liable only if you have first determined that Verizon is liable for any claims asserted under the New York State Human Rights Law.  If you determine that Verizon is not liable for hostile work environment under the New York State Human Rights Law, for example, then you cannot find Mr. Lucas liable for this claim.  Similarly, if you determine that Verizon is not liable for retaliation under the New York State Human Rights Law, then you cannot find Mr. Lucas liable for this claim.

However, if you determine that Verizon is liable under the New York State Human Rights Law for discrimination, hostile work environment, retaliation, or constructive discharge, then Mr. Lucas may be held liable only if Mr. Abreu proves by a preponderance of the evidence that Mr. Lucas aided or abetted Verizon by actually participating in the conduct that gives rise to the claim.  To be individually liable as an aider or abettor, Mr. Lucas must have shared the intent or purpose of the principal actor or actors at Verizon who engaged in the allegedly unlawful conduct, and Mr. Lucas must have directly and purposefully participated in this conduct.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** <u>Feingold v. New York</u>, 366 F.3d 138, 149-50, 157-58 (2d Cir. 2004*)*; <u>Drummond v. IPC Int'l, Inc.</u>, 400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005); <u>Curto v. Med. Work Communications, Inc.</u>, 388 F. Supp. 2d 101, 108 (E.D.N.Y. 2005); <u>Strauss v. NYS Dep't of Educ.</u>, 26 A.D. 3d 67, 72-73, 805 N.Y.S.2d 704 (3d Dep't 2005); <u>Graciani v. Patients Med., P.C.</u>, No. 13-cv-2751, 2015 WL 5139199, at *24-25 (E.D.N.Y. Sept. 1, 2015); <u>Robles v. Goddard Riverside Cmty. Ctr.</u>, No. 08-cv-4856, 2009 WL 1704627, at *3-4 (S.D.N.Y. June 17, 2009); <u>Graciani</u>, 2015 WL 5139199, at *24 ("Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose."); <u>Robles</u>, 2009 WL 1704627, at *3 ("to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful, participation.") (internal quotations and citations omitted); <u>Feingold</u>, 366 F.3d at 157 ("[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'") (internal citations omitted).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 19

<u>Individual Liability Under the New York State Human Rights Law - Thomas Bolger</u>

I will now instruct you about the standard for holding the individual defendant, Mr. Thomas Bolger, liable under the New York State Human Rights Law.  You may consider whether Mr. Bolger is liable only if you have first determined that Verizon is liable for any claims asserted under the New York State Human Rights Law.  If you determine that Verizon is not liable for hostile work environment under the New York State Human Rights Law, for example, then you cannot find Mr. Bolger liable for this claim.  Similarly, if you determine that Verizon is not liable for retaliation under the New York State Human Rights Law, then you cannot find Mr. Bolger liable for this claim.

However, if you determine that Verizon is liable under the New York State Human Rights Law for discrimination, hostile work environment, retaliation, or constructive discharge, then Mr. Bolger may be held liable only if Mr. Abreu proves by a preponderance of the evidence that Mr. Bolger aided or abetted Verizon by actually participating in the conduct that gives rise to the claim.  To be individually liable as an aider or abettor, Mr. Bolger must have shared the intent or purpose of the principal actor or actors at Verizon who engaged in the allegedly unlawful conduct, and Mr. Bolger must have directly and purposefully participated in this conduct.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** <u>Feingold v. New York</u>, 366 F.3d 138, 149-50, 157-58 (2d Cir. 2004) ("[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'") (internal citations omitted); <u>Drummond v. IPC Int'l, Inc.</u>, 400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005); <u>Curto v. Med. Work Communications, Inc.</u>, 388 F. Supp. 2d 101, 108 (E.D.N.Y. 2005); <u>Strauss v. NYS Dep't of Educ.</u>, 26 A.D.3d 67, 72-73 (3d Dep't 2005); <u>Graciani v. Patients Med., P.C.</u>, 2015 WL 5139199, at *724-25 (E.D.N.Y. Sept. 1, 2015); <u>Robles v. Goddard Riverside Cmty. Ctr.</u>, No. 08-cv-4856, 2009 WL 1704627, at *3-4 (S.D.N.Y. June 17, 2009); <u>Graciani</u>, 2015 WL 5139199, at *24 ("Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose."); <u>Robles</u>, 2009 WL 1704627, at *3 ("to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful, participation.") (internal quotations and citations omitted).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 20

<u>Individual Liability Under  42 U.S.C. § 1981 - Richard Francis</u>

I will now instruct you about the standard for holding the individual defendant, Mr. Richard Francis, liable under 42 U.S.C. § 1981 ("Section 1981").  You may consider whether Mr. Francis is liable only if you have first determined that Verizon is liable for any claims asserted under Section 1981.  If you determine that Verizon is not liable for hostile work environment under Section 1981, for example, then you cannot find Mr. Francis liable for this claim.  Similarly, if you determine that Verizon is not liable for retaliation under Section 1981, then you cannot find Mr. Francis liable for this claim.

However, if you determine that Verizon is liable under Section 1981 for discrimination, hostile work environment, retaliation, or constructive discharge, then Mr. Francis may be held liable only if Mr. Abreu proves by a preponderance of the evidence that Mr. Francis is causally connected to the conduct that gives rise to the claim.  To be individually liable, Mr. Francis must have shared the intent or purpose of the principal actor or actors at Verizon who engaged in the allegedly unlawful conduct, and Mr. Francis must have directly and purposefully participated in this conduct.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:  _____

REFUSED:  _____

MODIFIED:  _____

**Source:**  <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 229 (2d Cir. 2004) ("to make out a claim for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action.... [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.' (citation omitted)).  <u>Villar v. City</u>

of N.Y., 135 F. Supp. 3d 105, 140–41 (S.D.N.Y. 2015) ("A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others.") (internal quotations and citations omitted); Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 316 (E.D.N.Y. 2014) ("to prove individual liability based on these causes of action, a plaintiff most show that the individual was personally involved in the alleged violations of rights.").

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 21

<u>Individual Liability Under  42 U.S.C. § 1981 - David Lucas</u>

I will now instruct you about the standard for holding the individual defendant, Mr.

David Lucas, liable under 42 U.S.C. § 1981 ("Section 1981").  You may consider whether Mr.

Lucas is liable only if you have first determined that Verizon is liable for any claims asserted

under Section 1981.  If you determine that Verizon is not liable for hostile work environment

under Section 1981, for example, then you cannot find Mr. Lucas liable for this claim.  Similarly,

if you determine that Verizon is not liable for retaliation under Section 1981, then you cannot

find Mr. Lucas liable for this claim.

However, if you determine that Verizon is liable under Section 1981 for discrimination,

hostile work environment, retaliation, or constructive discharge, then Mr. Lucas may be held

liable only if Mr. Abreu proves by a preponderance of the evidence that Mr. Lucas is causally

connected to the conduct that gives rise to the claim.  To be individually liable, Mr. Lucas must

have shared the intent or purpose of the principal actor or actors at Verizon who engaged in the

allegedly unlawful conduct, and Mr. Lucas must have directly and purposefully participated in

this conduct.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:**  <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 229 (2d Cir. 2004) ("to make out a claim
for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to
causally connect the actor with the discriminatory action.... [P]ersonal liability under section
1981 must be predicated on the actor's personal involvement.' (citation omitted)).  <u>Villar v. City</u>

of N.Y., 135 F. Supp. 3d 105, 140–41 (S.D.N.Y. 2015) ("A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others.") (internal quotations and citations omitted); Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 316 (E.D.N.Y. 2014) ("to prove individual liability based on these causes of action, a plaintiff most show that the individual was personally involved in the alleged violations of rights.").

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 22

<u>Individual Liability Under  42 U.S.C. § 1981 - Thomas Bolger</u>

I will now instruct you about the standard for holding the individual defendant, Mr.

Thomas Bolger, liable under 42 U.S.C. § 1981 ("Section 1981").  You may consider whether Mr.

Bolger is liable only if you have first determined that Verizon is liable for any claims asserted

under Section 1981.  If you determine that Verizon is not liable for hostile work environment

under Section 1981, for example, then you cannot find Mr. Bolger liable for this claim.

Similarly, if you determine that Verizon is not liable for retaliation under Section 1981, then you

cannot find Mr. Bolger liable for this claim.

However, if you determine that Verizon is liable under Section 1981 for discrimination,

hostile work environment, retaliation, or constructive discharge, then Mr. Bolger may be held

liable only if Mr. Abreu proves by a preponderance of the evidence that Mr. Bolger is causally

connected to the conduct that gives rise to the claim.  To be individually liable, Mr. Bolger must

have shared the intent or purpose of the principal actor or actors at Verizon who engaged in the

allegedly unlawful conduct, and Mr. Bolger must have directly and purposefully participated in

this conduct.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:**  <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 229 (2d Cir. 2004) ("to make out a claim
for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to
causally connect the actor with the discriminatory action.... [P]ersonal liability under section
1981 must be predicated on the actor's personal involvement.' (citation omitted)).  <u>Villar v. City</u>

of N.Y., 135 F. Supp. 3d 105, 140–41 (S.D.N.Y. 2015) ("A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others.") (internal quotations and citations omitted); Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 316 (E.D.N.Y. 2014) ("to prove individual liability based on these causes of action, a plaintiff most show that the individual was personally involved in the alleged violations of rights.").

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 23

Constructive Discharge

Mr. Abreu has alleged that he was constructively discharged on account of his race, in violation of Title VII, Section 1981, and the New York State Human Rights Law.

Under all three laws, to establish a constructive discharge claim, Mr. Abreu must convince you by a preponderance of the evidence that his employer, rather than discharging him directly, intentionally created a work atmosphere so intolerable that he was forced to quit involuntarily. To establish intent, Mr. Abreu must show that his employer engaged in deliberate action.

When determining whether Mr. Abreu's work atmosphere was so intolerable that he was forced to quit, you must consider the evidence from the perspective of a reasonable person. This is an objective standard and requires you to look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Instead, you must consider the total circumstances and determine whether Mr. Abreu's work environment was so difficult or unpleasant that a reasonable person in Mr. Abreu's position would have felt compelled to resign. Even if you are convinced that Mr. Abreu has proven by a preponderance of the evidence that his work environment was so intolerable that a reasonable person in his shoes would feel compelled to resign, you must find he has proven, by a preponderance of the evidence, that Defendants deliberately created such conditions.   If you adjudge Verizon merely negligent, the Plaintiff has not proven constructive discharge.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** Reyes v. North Shore-Long Island Jewish Health Sys., No. 00-CV-6400, 2005 WL 1941634, at *4 (E.D.N.Y. Aug. 15, 2005) (dismissing claim of constructive discharge where, among other things, plaintiff thanked her employer in letter of resignation); Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 468 (S.D.N.Y. 2006) (providing the elements for a constructive discharge claim and finding for defendant because intent was not proven); Wright v. Goldman, 387 F. Supp. 2d 314, 325 (S.D.N.Y. 2004) (discussing the intent requirement); Harris v. City of Buffalo, No. 95-CV-0078E(M), 1996 WL 607069, at *3 n.6 (W.D.N.Y. Oct. 16, 1996) ("Although the Court developed this analysis to evaluate Title VII claims, it is also the appropriate analysis for evaluating constructive discharge claims under 42 U.S.C. § 1981 and the HRL."); Ioele v. Alden Press, Inc., 145 A.D.2d 29, 35-36, 536 N.Y.S.2d 1000 (1st Dep't 1989) (providing the standard for a constructive discharge claim) (citing Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d. Cir. 1983)).

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 24

Constructive Discharge Due to Hostile Work Environment

Mr. Abreu has alleged that an allegedly hostile work environment led to his constructive discharge, in violation of Title VII, Title 42, Section 1981 of the United States Code, and the New York State Human Rights Law.

Under all three laws, if you find for Mr. Abreu on his hostile work environment claim, that does not necessarily mean that he was constructively discharged. In determining whether Mr. Abreu was constructively discharged as a result of a hostile work environment, you must determine by a preponderance of the evidence, not only whether the misconduct complained of was severe or pervasive enough to create an objectively hostile work environment, but whether Mr. Abreu's working conditions were intentionally made so intolerable that a reasonable person would have felt compelled to resign. Constructive discharge due to a hostile work environment carries a higher burden than a hostile work environment claim standing on its own.

However, if you do not find by a preponderance of the evidence that Mr. Abreu was subjected to hostile work environment, it follows that you cannot find by a preponderance of the evidence that he was constructively discharged due to a hostile work environment. Merely occasional abusive language, race related jokes, and occasional teasing does not constitute a hostile work environment, or a work environment so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. Instead, the conduct must be extreme and the harassment must occur with such a degree of regularity as to be termed pervasive, and must amount to a material change in the terms and conditions of the plaintiff's employment.

**Source:**  Pa. State Police v. Suders, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more [than a hostile work environment claim]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (noting that isolated remarks or occasional episodes of harassment are insufficient to establish an actionable hostile work environment claim; rather, the incidents of harassment must occur with such a degree of regularity as to be termed pervasive); Borski v. Staten Island Rapid Transit, No. 04-CV-3614, 2009 U.S. Dist. LEXIS 103347, at *24-25 (E.D.N.Y. Oct. 28, 2009) (citing Arroyo v. WestLB Admin., Inc., 54 F. Supp. 2d 224, 231-32 (S.D.N.Y. 1999) ("The [constructive discharge] standard is not easily met.") (indicating that a "plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment" for a constructive discharge claim)); Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 468 (S.D.N.Y. 2006) (citing Green v. Harris Publ'ns, 331 F. Supp. 2d 180, 192-95 (S.D.N.Y. 2004) (finding that transfer of plaintiff to undesirable position after subjecting him to racial slurs and other insensitive language did not constitute constructive discharge because it did not constitute a hostile work environment)); Thomas v. Bergdorf Goodman, Inc., 2004 WL 2979960, at *6-7 (S.D.N.Y. Dec. 22, 2004) ("Constructive discharge can be seen as an aggravated case of hostile work environment."); Harris v. City of Buffalo, No. 95-CV-0078E(M), 1996 WL 607069, at *3 n.6 (W.D.N.Y. Oct. 16, 1996) ("Although the Court developed this analysis to evaluate Title VII claims, it is also the appropriate analysis for evaluating constructive discharge claims under 42 U.S.C. § 1981 and the HRL."); Gaffney v. City of N.Y., 101 A.D.3d 410, 411, 955 N.Y.S.2d 318 (1st Dep't 2012) ("The standard for establishing a claim of constructive discharge is 'higher than the standard for establishing a hostile work environment' where, as here, the alleged constructive discharge stems from the alleged hostile work environment. . . . Accordingly, because plaintiff failed to raise a triable issue of fact as to her hostile work environment claim, 'her claim of constructive discharge also fails.'") (citing Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d. Cir. 2010)).

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 25

<u>Affirmative Defense - Faragher-Ellerth</u>

The defendants have offered an affirmative defense to plaintiff's claims of hostile work environment, specifically that Mr. Abreu did not file a complaint with Verizon.  You must find for defendants on this claim, if you find defendants have proved by a preponderance of the evidence:

First: That Verizon exercised reasonable care to prevent and correct promptly any racially harassing behavior; and

Second: that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Verizon or to avoid harm otherwise.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:**  3C Fed. Jury Prac. & Instr. § 171:74 (6th ed. 2017); <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 777-78 (1998) (an affirmative defense to hostile environment claims is available to employers under Title VII upon a showing that (1) "the employer exercised reasonable care to prevent and correct promptly any [] harassing behavior," and (2) the victimized employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise"); <u>Vitale v. Rosina Food Products Inc.</u>, 283 A.D.2d 141 (4th Dep't 2001) (employer's burden to plead and establish both elements of this defense); <u>Barnum v. N.Y.C. Transit Auth.</u>, 62 A.D.3d 736 (2d Dep't 2009) (applying defense to New York State Human Rights Law claims); <u>Dunn v. Astoria Fed. Sav. & Loan Ass'n.</u>, 51 A.D.3d 474 (1st Dep't 2008) (same).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 26

Damages - Reasonable Certainty of Damages

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the defendants, or any of them should be held liable.  I give you these instructions on damages solely because I am required to charge you on all phases of the case that you might have to consider.

If you find by a preponderance of the evidence for Mr. Abreu on any of his claims, then you must consider the issue of compensatory damages.  If you find that the plaintiff has failed to prove his claims, then you must find for defendants, and you will not award damages.

The law places a burden upon Mr. Abreu to prove such facts as will enable you to arrive at the amount of damages with reasonable certainty and without speculation. While it is not necessary that plaintiff prove the amount of those damages with mathematical precision, Mr. Abreu is required to present such evidence as might reasonably be expected to be available under the circumstances.

_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source**: Devitt, Blackman & Wolff, Federal Jury Practice & Instructions § 85.14 (4th ed. 1987).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 27

<u>Measure of Damage - Back Pay</u>

If you find that Mr. Abreu has proven his claims, then you should consider whether he is entitled to "back pay."  Back pay is made up of any salary that he would have earned at Verizon that he would have earned had he not been removed from Fire Island or constructively discharged.  Again, you must find that the loss Mr. Abreu claims he suffered was actually caused by unlawful conduct of defendants rather than any other cause.

 To calculate back pay, you should consider the amount of earnings that Mr. Abreu would have received, but did not receive because of unlawful discrimination or retaliation, between the date of his removal from Fire Island and/or constructive discharge from Verizon and the date Mr. Abreu either accepted or should have accepted comparable employment.  The amount of back pay thus must take into account any money Mr. Abreu either received or should have received from new employment.  You also are required to deduct any other income earned by Mr. Abreu since his removal from Fire Island and/or constructive discharge from Verizon, including any unemployment or other benefits that he may have received.


_____

UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** <u>Lorillard v. Pons</u>, 434 U.S. 575 (1978); <u>Albermarle Paper Co. v. Moody</u>, 422 U.S. 405, 412-13 (1975); <u>Carrero v. New York City Housing Auth.</u>, 890 F.2d 569, 580 (2d Cir. 1989); 3C O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 171.1 (5th ed. 2000).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 28

<u>Measure of Damage - Front Pay</u>

If you find that Mr. Abreu has proven his claims, then you should also consider whether he is entitled to "front pay."  Front pay refers to salary and benefits that Mr. Abreu would earn between the time of this trial and a reasonable future date, had he not been removed from Fire Island and/or constructively discharged from Verizon.  As I will explain further in a moment, Mr. Abreu has a duty to mitigate his damages by seeking comparable work, and so you also must take into account any salary and benefits he should have received from new employment. Although some uncertainty in the amount of front pay does not bar recovery and mathematical precision is not required, you may not speculate or guess in making any front pay award.  Rather, you should make reasonable estimates concerning the amount of future salary and benefits Mr. Abreu would have earned, and Mr. Abreu should not be made more than whole.  In other words, Mr. Abreu must prove these damages with reasonable certainty, and he must prove that the losses he claims he suffered were actually caused by unlawful conduct by defendants rather than any other cause.

To determine front pay, then, you should consider and weigh the following factors:

(1) The amount of salary and benefits that Mr. Abreu would have received between now and a reasonable future date, if he would have not have been constructively discharged by Verizon;

(2) The amount of earnings that Mr. Abreu could reasonably be expected to receive from another employer or employers between now and a reasonable future date.  This amount would reduce any front pay award to Mr. Abreu;

(3) The period of time involved.  You should not award front pay damages beyond the date that you find Mr. Abreu would have left Verizon – whether through retirement or any other

60

reason – had his employment with Verizon continued.  In addition, you should only award front pay for a period of time for which you can determine damages with reasonable certainty.  You should keep in mind that the longer the period of time for which you try to determine a front pay award, the less likely it is that any loss of future earnings can be demonstrated with any degree of certainty or can reasonably be attributed to any unlawful conduct by the defendants.

An award of front pay then must be reduced to its present value.  By reducing an award of front pay to its present value, you avoid overpaying.  For example, if you wanted to award someone $100 today for losses that he or she is reasonably likely to sustain over the next two years, you would not simply award him $100.  Rather, you would award him a lesser sum, which if reasonably invested, would grow to $100 in two years.  The computation is made using a so-called "present value" table, which the Court will give to you.


_____
UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____


**Source:** Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846-47 (2001); Ramirez v. New York City Off-Track Betting Corp., 112 F.3d 38, 41 (2d Cir. 1997); Padilla v. Metro-N. Commuter R.R., 92 F.3d 117, 124-25 (2d Cir. 1996); Mody v. Gen. Elec. Co., No. 04-CV-358, 2006 WL 3050834, at *3 (D. Conn. Oct. 25, 2006); Hill v. Airborne Freight Corp., Nos. 97-CV-7098, 98-CV-6249 (FB), 2003 WL 366641, at *4 (E.D.N.Y. Feb. 20, 2003); 3C O'Malley, Grenig & Lee, Federal Jury Practice & Instructions § 171.92 (5th ed. 2000).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 29

<u>Compensatory Damages - Emotional Distress</u>

If you find that Mr. Abreu has proven one or more of his claims of discrimination or retaliation, he may be entitled to reasonable compensation for emotional distress.  Emotional distress damages are intended to compensate Mr. Abreu for mental anguish or humiliation that he may have suffered because of any unlawful conduct by defendants.

To recover damages for mental and emotional distress, Mr. Abreu must present credible testimony with respect to the claimed mental anguish and corroboration, either by competent medical proof or by the circumstances of the case.  Emotional distress may be proved by Mr. Abreu's own testimony, corroborated by reference to the circumstances of the alleged misconduct.

If  you find that the evidence of Mr. Abreu's alleged mental suffering is generally limited to his own testimony, and he describes his suffering in vague or conclusory terms, without relating either the severity or the consequences of the suffering, then plaintiff is not entitled to anything more than "garden variety" emotional distress damages.  Garden variety emotional distress damages claims typically lack extraordinary circumstances and are not supported by any medical corroboration.  You must use your judgment and common sense to determine an amount that would fairly compensate plaintiff for such garden variety emotional distress.

Mr. Abreu can only recover for the emotional distress, if any, that he proves, by a preponderance of the evidence, was caused by the unlawful conduct of defendants.  If you find that Mr. Abreu has proved that he suffered mental or emotional distress, but that such distress was not caused by Verizon at all, or by Verizon's unlawful discrimination or retaliation, then you may not award him damages for mental or emotional distress.

Although some uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages for emotional distress.  You must base any award on just and reasonable inferences from the evidence.

_____

UNITED STATES DISTRICT JUDGE

GIVEN:    _____

REFUSED:    _____

MODIFIED:    _____


**Source**: Noel v. N.Y. State Office of Mental Health Central N.Y. Psychiatric Ctr., 361 F. App'x 196, 197 (2d Cir. 2010) (emotional distress cannot be based on speculation); Patrolmen's Benevolent Ass'n. of City of N.Y. v. City of N.Y., 310 F.3d 43, 55 (2d Cir. 2002); Cowan v. Prudential Ins. Co. of Am., 852 F.2d 688, 690-91 (2d Cir. 1988) (discussing causation requirement for award of emotional distress); Olsen v. Cnty. of Nassau, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) ("To obtain emotional distress damages, a plaintiff must establish actual injury and the award must be supported by competent evidence in addition to a plaintiff's subjective testimony.") (internal quotation marks omitted); Jarrar v. Harris, No. CV07-3299(CBA)(JO), 2008 WL 2946000, at *6 (E.D.N.Y. July 25, 2008); Khan v. HIP Centralized Lab Services, Inc., No. CV-03-2411, 2008 U.S. Dist. Lexis 76721, at *30 (E.D.N.Y. Sept. 17, 2008); Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005); Quinby v. Westlb AG, No. 04 Civ. 7406, 2008 U.S. Dist. Lexis 62366, at *8 (S.D.N.Y. Aug. 15, 2008); 3C O'Malley, Grenig & Lee, Federal Jury Practice & Instructions § 171.90 (5th ed. 2000).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 30

<u>Mitigation of Damages</u>

I have mentioned that Mr. Abreu has a legal obligation to try to find other employment or otherwise to "mitigate" or minimize his damages.  What I mean by this is that, as a person who claims damages as a result of an alleged wrongful act on the part of defendants, Mr. Abreu has a duty under the law to take advantage of any reasonable opportunity he may have had under the circumstances to reduce or minimize the damage through alternate employment, whether that employment was at Verizon or elsewhere.

During an initial period after his removal from Fire Island and/or constructive discharge from Verizon, Mr. Abreu's obligation was to take all reasonable steps to seek out, explore, investigate, make inquiries about, and take advantage of employment opportunities comparable to his employment at Verizon.  After a reasonable period of unemployment, however, Mr. Abreu had a legal obligation to lower his sights and expand his search efforts to explore suitable positions of more modest stature, even if such employment was not comparable to his employment at Verizon, to avoid a sustained period of idleness.  If you find that Verizon established, by a preponderance of the evidence, that Mr. Abreu did not lower his sights and expand his search to include suitable employment of a more modest stature after a reasonable period of unemployment, then you should find that Mr. Abreu failed to mitigate his damages during that period.

If you find that Verizon has established that Mr. Abreu failed to mitigate his damages, then you should reduce the amount of Mr. Abreu damages by the amount he could have reasonably realized if his search efforts had been reasonable.

_____

UNITED STATES DISTRICT JUDGE

GIVEN: _____

REFUSED: _____

MODIFIED: _____

**Source:** Ford Motor Company v. EEOC, 458 U.S. 219, 231 (1982); Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 695-96 (2d Cir. 1998); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53-55 (2d Cir. 1998); Dailey v. Society Generale, 108 F.3d 451, 456 (2d Cir. 1997); Shannon v. Fireman's Fund Ins. Co., 136 F. Supp. 2d 225, 228-29 (S.D.N.Y. 2001); Micalone v. Long Island R.R. Co., 582 F. Supp. 973, 980 (S.D.N.Y. 1983); EEOC v. Yellow Freight Sys., Inc., No. 98 Civ. 2270 (THK), 2001 U.S. Dist. LEXIS 20240, at *4 (S.D.N.Y. Dec. 6, 2001).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 31

Punitive Damages

[ONLY TO BE GIVEN IF PLAINTIFF ESTABLISHES JURY QUESTION]

Mr. Abreu claims not only that defendants discriminated against him based on his race, but that defendants did so with malice or reckless indifference to Mr. Abreu's protected rights federal law so as to entitle him to an award of punitive damages in addition to compensatory damages.  Title VII allows, but do not require, a jury to award punitive damages, in order to punish a wrongdoer for extraordinary misconduct, and to warn others against doing the same.

An award of what are called "punitive damages" would be permitted in this case only if you find for Mr. Abreu and then further find that he has proven by a preponderance of the evidence that a management official of Verizon personally acted with malice or reckless indifference to his federally protected rights.  An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway.  An action is with reckless indifference if taken with knowledge that it may violate the law.  If you do not find that a management official of Verizon personally acted with malice or reckless indifference to Mr. Abreu's federally protected rights, then you cannot award punitive damages.

However, if you determine that defendants made reasonable, good-faith efforts to comply with the law forbidding discrimination, then defendants did not act with malice or reckless indifference to Mr. Abreu's protected civil rights.  In determining defendants' good faith, you may consider whether Verizon adopted policies and procedures prohibiting discrimination, and trained its employees to ensure equal treatment of employees, regardless of race.  On the issue of good faith, defendants bear the burden of proof by a preponderance of the evidence.  During the trial, Verizon introduced evidence regarding its anti-discrimination and anti-retaliation policies, procedures and training programs.  If you find that defendants made good faith efforts to comply

66

with anti-discrimination laws, by maintaining and enforcing its anti-discrimination policy, then you cannot award punitive damages.

An award of punitive damages is discretionary; that is, no matter how you view the evidence, you are not required to award them.

If you do award punitive damages against defendants, you should fix the amount using calm discretion and sound reason.  You must not be influenced by sympathy for or dislike of any party in the case.


_____
UNITED STATES DISTRICT JUDGE

GIVEN:_____

REFUSED:_____

MODIFIED:_____

**Source:** Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 235-36 (2d Cir. 2000); Tse v. UBS Fin. Servs., Inc., 568 F. Supp. 2d 274 (S.D.N.Y. 2008); 3C O'Malley, Grenig & Lee, Federal Jury Practice & Instructions § 171.94 (5th ed. 2000)

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 32

<u>Verdict - Unanimous - Duty to Deliberate</u>

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is wrong.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans.  You are judges.  By that, I mean you are the judges of the facts. Your sole interest is to seek the truth from the evidence in the case.


_____
UNITED STATES DISTRICT JUDGE

GIVEN:_____

REJECTED:_____

MODIFIED:_____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 106.01 (6th ed. 2011).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 33

<u>Election of Foreperson - Special and Supplemental Verdict Forms</u>

Upon retiring to the jury room, you should elect one of your group to act as your foreperson.  The foreperson will preside over your deliberations, and will be your spokesperson here in Court.

Special and supplemental verdict forms have been prepared for your convenience.  You will take these forms with you to the jury room.

When you have reached unanimous agreement as to your verdict in this case, your foreperson will fill out the forms and the jury will then return with the completed forms to the courtroom.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:_____

REFUSED:_____

MODIFIED:_____

**Source:** Eleventh Circuit Pattern Jury Instructions, Civil Instructions, Basic Instruction No. 8 (2000); 3 Devitt, Blackmar & Wolff, <u>Federal Jury Practice & Instructions</u>, § 74.06 (4th ed. 1987)

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 34

<u>Verdict Forms - Jury Responsibility</u>

I caution you that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.


_____

UNITED STATES DISTRICT JUDGE

GIVEN:_____

REFUSED:_____

MODIFIED:_____


**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 106.07 (6th ed. 2011).

DEFENDANTS' PROPOSED FINAL JURY INSTRUCTION NO. 35

<u>Communications Between Court and Jury</u>

If it becomes necessary during your deliberations to communicate with the Court, you may send me a note through the marshal, signed by your foreperson or by one or more members of the jury.  I will then respond as promptly as possible, either in writing or by having you return to the courtroom so I can address you orally.  No member of the jury should attempt to communicate with the Court by any means other than a signed note, and the Court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open Court.

Bear in mind also that you are never to reveal to any person – not even to the Court – how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict in this case.

_____
UNITED STATES DISTRICT JUDGE

GIVEN:_____

REFUSED:_____

MODIFIED:_____

**Source:** 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 106.08 (6th ed. 2011).

## CERTIFICATE OF SERVICE

I, Paul H. Galligan, hereby certify that on July 5, 2017, I electronically filed the foregoing DEFENDANTS' PROPOSED JURY CHARGE with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Paul H. Galligan*
Paul H. Galligan