UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ADAN ABREU,

                        Plaintiff,

-against-

VERIZON OF NEW YORK, INC., DAVID LUCAS,
THOMAS BOLGER, and RICHARD FRANCIS,

                        Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-CV-58 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination and retaliation action filed by Plaintiff Adan Abreu ("Plaintiff" or "Abreu") is Defendants' Verizon New York, Inc. ("Verizon"), Thomas Bolger ("Bolger"), Richard Francis ("Francis"), and David Lucas ("Lucas") (Bolger, Francis, and Lucas collectively, the "Individual Defendants," and together with Verizon, "Defendants") motion seeking reconsideration of the July 10, 2017 Memorandum and Order issued by the Honorable Leonard D. Wexler denying Defendants' motion for summary judgment.[1] *See* DE [54]. For the reasons set forth herein, the Court denies Defendants' motion.

**I.    Relevant Background**

By way of Complaint filed on March 31, 2016, Plaintiff commenced this action against his former employer Verizon and the Individual Defendants asserting claims of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981, and the New York State Human

---

[1] This action was subsequently assigned to this Court for all purposes on July 11, 2017 pursuant to 28 U.S.C. § 636(c). *See* Docket Entries ("DEs") [30], [57].

1

Rights Law, N.Y. Exec. Law § 290 *et seq*. *See* DE [1]. Abreu subsequently filed an Amended Complaint on February 4, 2016. *See* DE [18]. Plaintiff, who is Black-Hispanic, alleges that he was subjected to discrimination on the basis of his race, color, and national original during his employment with Verizon. *See id.* ¶ 2. Abreu further alleges that, after he filed a complaint of discrimination with the Verizon ethics committee, Defendants retaliated against him by removing him from his approximately six- to seven-year assignment on Fire Island, and not permitting him to return, under the pretext of a dress code violation. *See id.* ¶¶ 35-36.

After proceeding with discovery, the parties appeared for a pretrial conference before Judge Wexler on November 14, 2016. *See* DE [28]. At that conference, Judge Wexler, among other things, scheduled a jury selection date of July 10, 2017 and recommended that this Court grant Plaintiff's motion for an extension of time to complete discovery. *See id.* On March 1, 2017, Abreu filed a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (the "Consent Form") that was executed by all parties, and which memorialized the parties' consent that the matter proceed before this Court for all purposes pursuant to 28 U.S.C. § 636(c).[2] *See* DE [30].

In accordance with a briefing schedule set by Judge Wexler, *see* Electronic Order dated April 13, 2017; DE [33], Defendants filed their fully-briefed motion for summary judgment on June 16, 2017. *See* DEs [36]-[38]. Three days later, on June

---

[2] Notwithstanding the parties' execution and submission of the Consent Form on March 1, 2017, Judge Wexler continued to preside over the matter until he referred it to this Court for all purposes on July 11, 2017. *See* DE [57].

2

19, 2017, the parties submitted a Proposed Joint Pretrial Order. *See* DE [39]. On June 28, 2017, Defendants filed four motions *in limine* seeking to exclude from trial certain evidence being offered by Abreu, which Plaintiff opposed. *See* DEs [40]-[43], [50]-[53]. This Court approved the Proposed Joint Pretrial Order and certified that discovery was complete on June 29, 2017. *See* DE [44]; Electronic Order dated June 29, 2017.

By Memorandum and Order dated July 10, 2017, Judge Wexler denied Defendants' motion for summary judgment on the basis that genuine issues of material fact existed with respect to Abreu's claims. *See* DE [54] at 2. Judge Wexler further ruled that "[t]he parties may renew their arguments at trial." *Id.* That same day, the Court selected a jury and the parties completed their opening statements. *See* DE [55]. The following day, on July 11, 2017, trial proceeded until Judge Wexler declared a mistrial and advised the parties that the matter would be assigned to this Court for all purposes. *See* DE [56]. Immediately thereafter, Judge Wexler signed and entered the Consent Form. *See* DE [57].

On July 28, 2017, Defendants filed the instant motion seeking reconsideration of Judge Wexler's denial of their motion for summary judgment. *See* DE [58]. Pursuant to a briefing schedule set by this Court, Plaintiff opposed Defendants' motion on September 18, 2017 and Defendants submitted a reply in further support of their motion on October 2, 2017. *See* DEs [63], [64].

## II. Legal Standard

Rule 59 of the Federal Rules of Civil Procedure ("Rule 59") provides that a party may move for reconsideration of a court's judgment so long as the party files its "motion to alter or amend a judgment . . . no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Further, Local Civil Rule 6.3 requires the party seeking reconsideration to "set forth concisely the matters or controlling decisions which the party believes the court has overlooked." *Pickering-George v. Attorney Gen. of U.S.*, No. 10-CV-1103, 2011 WL 52363, at *1 (E.D.N.Y. Jan. 5, 2011) (quoting Local Civ. R. 6.3) (internal alteration omitted). "A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). It is well-established that "[t]he standard for a motion for reconsideration is demanding, and should be 'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Henry v. Alliance for Health, Inc.*, No. 05-CV-1264, 2006 WL 3050873, at *1 (E.D.N.Y. Oct. 18, 2006) (quoting *Wechsler v. Hunt Health*

*Sys., Ltd.*, 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002)); *see also Hunt v. Enzo Biochem, Inc.*, No. 06 Civ. 170, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007) ("A motion for reconsideration is not . . . a second bite at the apple for a party dissatisfied with a court's ruling.") (internal quotation omitted). Ultimately, motions for reconsideration "are committed to the sound discretion of the district court." *Image Processing Techs. v. Canon Inc.*, No. 10-CV-3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012).

### III. Discussion

In support of the instant motion, Defendants argue that Judge Wexler "overlooked the clear precedent supporting [their] motion [for summary judgment] as well as the absence of disputed material facts proffered by Plaintiff in opposition to the [m]otion." Memorandum of Law in Support of Defendants' Motion for Reconsideration ("Defs.' Mem."), DE [58-1], at 1. In opposition, Abreu asserts: (i) that this Court lacks the authority under the United States Constitution to review the decision of an Article III judge; (ii) that Defendants' motion for reconsideration is untimely; and (iii) that Defendants' motion for reconsideration fails on the merits. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Reconsideration ("Pl.'s Mem."), DE [63], at 1-2. For the reasons set forth below, this Court concludes that it has the authority to decide Defendants' motion for reconsideration and finds that the motion was timely filed, but nevertheless denies the motion on the merits.

## A. This Court's Authority to Decide Defendants' Motion

Plaintiff contends that this Court must deny Defendants' motion for reconsideration on the basis that any review by a magistrate judge of a district judge's decision is a violation of the United States Constitution, "as an Article I [m]agistrate [j]udge lacks jurisdiction to review the decision of an Article III [j]udge."[3] Pl.'s Mem. at 4. In response, Defendants assert that Abreu's argument is misplaced because the parties consented to the exclusive jurisdiction of this Court on March 1, 2017. *See* Defs.' Mem. at 2. The parties' arguments raise two distinct legal questions. First, as a preliminary matter, the Court must determine whether this action has been and remains properly referred to this Court on consent for all purposes pursuant to 28 U.S.C. 636(c). Second, assuming consent exists under § 636(c), the Court must determine whether it has the constitutional authority to review Judge Wexler's decision on a dispositive motion. The Court answers both questions in the affirmative.

### 1. Consent

28 U.S.C. 636 provides, in relevant part:

> Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

---

[3] It is unclear whether Plaintiff is asserting that this Court lacks the authority to reach the merits of Defendants' motion for reconsideration irrespective of outcome or, alternatively, that this Court simply may not revise or overturn Judge Wexler's prior decision. This distinction, however, is immaterial to the Court's analysis.

6

28 U.S.C. § 636(c)(1); *see* Fed. R. Civ. P. 73(a) ("When authorized under [ ] § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding, including a jury or nonjury trial."). A referral under these provisions "gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585, 123 S. Ct. 1696, 1700–01 (2003); *see* Fed. R. Civ. P. 73 Adv. Comm. Notes (1983) ("The only exception to a magistrate's exercise of civil jurisdiction, which includes the power to conduct jury and nonjury trials and decide dispositive motions, is the contempt power.").

Section 636(c)(2) and Fed. R. Civ. P. 73(b) set forth the procedures governing referrals under § 636(c)(1) and Fed. R. Civ. P. 73(a). Pursuant to § 636(c)(2), "[i]f a magistrate judge is designated to exercise civil jurisdiction under [§ 636(c)(1)], the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction." 28 U.S.C. § 636(c)(2). Fed. R. Civ. P. 73(b)(1) directs the clerk of court to "give the parties written notice of their opportunity to consent under [§ 636(c)]." If the parties elect to proceed on consent before the magistrate judge, "[t]he decision of the parties shall be communicated to the clerk of court." 28 U.S.C. § 636(c)(2). Fed. R. Civ. P. 73(b)(1) further specifies that "the parties must jointly or separately file a statement consenting to the referral" to signify their consent and that "[a] district judge or magistrate judge may be informed of a party's response to the clerk's notice only if all parties have consented to the referral." Pursuant to Local Civil Rule 73.1(b), "[w]hen a completed consent

7

form has been filed, the [c]lerk shall forward the form for final approval to the [d]istrict [d]udge to whom the case was originally assigned." L. Civ. R. 73.1(b). "Once the [d]istrict [j]udge has approved the transfer and returned the consent form to the [c]lerk for filing, the clerk shall reassign the case for all purposes to the [m]agistrate [j]udge previously designated to receive any referrals or to whom the case has previously been referred for any purpose." *Id.*

Here, the parties have unequivocally consented to this Court's jurisdiction under 28 U.S.C. § 636 consistent with the procedures outlined above. On January 7, 2015, the clerk of court, in accordance with Fed. R. Civ. P. 73 and L. Civ. R. 73.1, notified the parties of the availability of a United States magistrate judge to conduct all proceedings in this matter. *See* DE [3]. The Consent Form, which was signed by all parties and filed electronically on March 1, 2017, states that the parties consent to have "the magistrate judge who is assigned to this case" conduct all proceedings "including trial, the entry of final judgment, and all post-trial proceedings." DE [30]. Plaintiff has never expressly attempted to withdraw his consent, even in opposition to the instant motion. Nor does Abreu assert that the Consent Form is otherwise ineffective; rather, Plaintiff only notes that "if Judge Wexler had granted consent to [m]agistrate [j]urisdiction prior to . . . issuing the Order on July 10, 2017 denying summary judgment, Magistrate Judge Locke would have made the ultimate determination regarding the motion for summary judgment." Pl.'s Mem. at 4. This point, though true, is irrelevant because Judge Wexler thereafter signed the Consent Form and formally referred the matter to this Court for all purposes before

8

Defendants filed the instant motion. *See* DE [57]. Accordingly, this matter has been and remains properly referred to this Court on consent for all purposes pursuant to 28 U.S.C. § 636(c).

### 2. Review of District Judge's Order

The next issue, then, is whether an Article I magistrate judge presiding over a matter on consent under 28 U.S.C. § 636(c) has the authority to review an Article III district judge's order previously issued in the same matter. In evaluating this issue, the Court must reconcile the language of § 636(c), which provides that, upon the parties' consent, a magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter," with the principle that "[a] judgment entered by an Article III court having jurisdiction to enter that judgment is not subject to review by a different branch of the government . . . ," *Town of Deerfield, N.Y. v. F.C.C.*, 992 F.2d 420, 428 (2d Cir. 1993). As Plaintiff correctly points out, *see* Pl.'s Mem. at 4, the United States Supreme Court has observed that the framers of the United States Constitution "crafted [Article III] with an expressed understanding that it gives the [f]ederal [j]udiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19, 115 S. Ct. 1447, 1453 (1995)." Similarly, the Second Circuit in *Town of Deerfield* noted that "[r]eview of a federal district court judgment may be had only in a federal court of appeals . . . or the Supreme Court . . . ." 992 F.2d at 420. But neither the Supreme Court nor Second Circuit has spoken directly on the

9

question presently at bar, and federal courts doing so in a variety of jurisdictions have reached conflicting conclusions.

In *Taylor v. Nat'l Grp. of Companies, Inc.*, then Magistrate Judge James G. Carr ruled that federal magistrates do not have the authority to reconsider and set aside or alter prior decisions of the presiding district judge: "It is simply not the case that a magistrate's jurisdiction is, by fiat, somehow merged with that of the district judge to an extent sufficient to vest the magistrate with the authority to reconsider and set aside or alter prior decisions of the district judge." 765 F. Supp. 411, 413 (N.D. Ohio 1990). In so holding, Judge Carr relied heavily on the fact that § 636, "which establishes jurisdiction and powers of federal magistrates, does not authorize magistrates to reconsider prior rulings of a district judge in referred cases." *Id.* at 413-14. In addition, Judge Carr reasoned that "[t]he powers of a federal magistrate are limited relative to those of district judges," noting that the former "are . . . , to some extent, subject to the authority of [the latter], but the converse is not true." *Id.* at 414. Further, in *Nelson v. McGrain*, Magistrate Judge Jonathan W. Feldman relied on *Taylor* and concluded that he "d[id] not have jurisdiction to hear defendant's motion—the import of which would be to reconsider [the district judge's] decision— even with consent from the parties."[4] No. 12-CV-6292, 2017 WL 4155420, at *2 (W.D.N.Y. Sept. 19, 2017).

---

[4] Judge Feldman acknowledged that "[t]he Second Circuit has not squarely addressed whether a magistrate judge can reconsider the decision of district court judge," but suggested that "the prevailing weight of authority militates against it." *Nelson*, 2017 WL 4155420, at *2. To support that proposition, Judge Feldman cited only *Taylor* and *Cooper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995).

10

By contrast, the United States Court of Appeals for the Fifth Circuit has reached the opposite conclusion:

> For a magistrate judge to decline to follow a district judge's opinion may be unusual, but when (1) both parties consent to the jurisdiction of the magistrate judge and (2) the district judge specifically designates the magistrate judge to conduct civil proceedings, the magistrate judge "may act in the capacity of a district court judge" and is not bound by prior opinions expressed by the district judge.

*Cooper*, 70 F.3d at 378, n.6; *see United States v. Johnston*, 258 F.3d 361, 369 (5th Cir. 2001) (noting that "a magistrate judge may have the authority to reconsider a district court's prior decision in a civil case . . ."). Subsequently, courts in the District of Massachusetts and the Southern District of Florida have concurred with the Fifth Circuit's approach. In *Fieldwork Boston, Inc. v. United States*, Magistrate Judge Robert B. Collings disagreed with Judge Carr's analysis in *Taylor* on a number of grounds. 344 F. Supp. 2d 257 (D. Mass. 2004). Specifically, Judge Collings pointed out that: (i) after a case is reassigned to the magistrate judge pursuant to the parties' consent, the plain language of § 636(c) implicitly gives that magistrate judge power to reconsider rulings made by the district judge before the reassignment; (ii) the fact that the district judge may vacate a reference made thereunder "for good cause," *see* § 636(c)(6), does not constrain a magistrate judge's power to reconsider a prior ruling of a district judge in a case after it is transferred to the magistrate judge upon the parties' consent; and (iii) the *Taylor* court's general statement that the authority of a

---

However, as discussed further below, *Cooper* actually endorses the concept that a magistrate judge may, in certain circumstances, modify a district judge's prior ruling. *See* 70 F.3d at 378, n.6.

11

magistrate judge is limited in a number of ways does not necessarily "lead[] to the conclusion that the authority of a magistrate judge is limited in the specific area of motions for reconsideration." *Fieldwork Boston*, 344 F. Supp. 2d at 272-73. Perhaps most noteworthy, Judge Collings concluded:

> In my view, this result best comports with the plain wording of § 636(c) and makes sense as well. For example, what if, after the district judge issued a ruling and the case was then reassigned to a magistrate judge pursuant to § 636(c), the Supreme Court handed down a decision which undercut the basis for the district judge's ruling? Can it be sensibly argued that the magistrate judge could not alter the district judge's ruling to comport with the Supreme Court's opinion? The answer is obvious.

*Id.* at 274.

Several district courts in Florida followed suit. Relying upon both *Cooper* and *Fieldwork Boston*, the court in *Marlite, Inc. v. Eckenrod* held that "a magistrate judge presiding in a consent case has authority under § 636(c) . . . to rule on *all* pending motions in the case." No. 10-23641-CIV, 2011 WL 13113714, at *3 (S.D. Fla. July 25, 2011) (emphasis in original), *report and recommendation adopted*, No. 10-23641-CIV, 2011 WL 13113715 (S.D. Fla. Aug. 30, 2011). Further, the court in *Underwriters at Lloyds London v. STD Enterprises, Inc.* noted that "[e]ven if the [d]istrict [j]udge had conclusively determined the interpretation of the statute as urged by Defendant . . . , such a ruling would not bind the magistrate judge once the parties consented pursuant to 28 U.S.C. § 636(c) and the case was referred to a specific magistrate judge." No. 8:03CV1696, 2006 WL 132720, at *2 (M.D. Fla. Jan. 17, 2006).

In the Court's view, *Cooper*, *Fieldwork Boston*, *Marlite,* and *Lloyds* are—in contrast to *Taylor* and *Nelson*—highly persuasive. According to the plain language

12

of § 636(c), "[u]pon the consent of the parties" this Court "may conduct any or all proceedings in a jury or nonjury civil matter . . . ." Moreover, neither the statute nor any other authority expressly removes motions for reconsideration of prior rulings by a district judge from the purview of a magistrate judge presiding on consent. Therefore, the Court holds that it has the constitutional authority to decide the instant motion seeking reconsideration of Judge Wexler's order denying Defendants' motion for summary judgment.[5] This conclusion does not conflict with the holdings of *Plaut* and *Town of Deerfield* because, notwithstanding the limitations on authority inapplicable here, a magistrate judge "act[s] in the capacity of a district judge" when the parties have consented under § 636(c). *Cooper*, 70 F.3d at 378, n.6 (quoting *McGinnis v. Shalala*, 2 F.3d 548, 551 (5th Cir. 1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1293 (1994)).

### B. <u>Timeliness of Defendants' Motion</u>

Plaintiff also contends that Defendants' motion for reconsideration must be denied as untimely because Local Civil Rule 6.3 requires a motion for reconsideration to be filed within 14 days of the Court's determination of the original motion. Defendants, however, move for reconsideration pursuant to Rule 59, *see* DE [58], which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Courts within this Circuit permit a motion to reconsider and amend a decision granting summary

---

[5] Because this court has authority to decide the instant motion for reconsideration, it need not address Plaintiff's argument that Judge Wexler is himself prohibited from reviewing his decision on the motion for summary judgment. The court notes only that, contrary to Plaintiff's contention, Judge Wexler never recused himself from this matter.

13

judgment to be brought under Rule 59(e)." *Harrell v. Joshi*, No. 14-CV-7246, 2015 WL 9275683, at *4 (S.D.N.Y. Dec. 18, 2015); *see Patel v. Lutheran Med. Ctr., Inc.*, 775 F. Supp. 592, 596 (E.D.N.Y. 1991). Moreover, the 14-day period prescribed by Local Civil Rule 6.3 applies "[u]nless otherwise provided by . . . Fed. R. Civ. P. . . . 59." Here, because Defendants moved for reconsideration under Fed. R. Civ. P. 59, the 28-day period applies. Defendants filed their motion on July 28, 2017, 18 days after Judge Wexler's decision on their motion for summary judgment. Accordingly, Defendants' motion is timely.

### C. <u>Merits of Defendants' Motion</u>

Having determined that it may properly do so, the Court turns to the merits of Defendants' motion for reconsideration. In support of their motion, Defendants do not identify an intervening change of controlling law or any new evidence that has become available. Rather, Defendants merely claim that reconsideration is proper because "the Court overlooked critical facts and legal precedent regarding Plaintiff's claims of discrimination, retaliation, hostile work environment, and constructive discharge." Defs.' Mem. at 1. This Court considers Defendants' motion an attempt to relitigate issues already decided by Judge Wexler and, thus, concludes that Defendants have failed to meet the high standard required for reconsideration under Rule 59(e) and Local Civil Rule 6.3.

#### 1. Retaliation Claim

Defendants contend that Judge Wexler improperly denied summary judgment with respect Plaintiff's retaliation claim because the undisputed facts demonstrate

14

that he did not suffer any adverse employment action. *See* Defs.' Mem. at 6-7. Defendants further assert that, even if Abreu could show an adverse action, he cannot rebut the facts that the alleged adverse action occurred before he complained to Verizon and that such action was not a result of his engaging in protected activity. *See id*. at 4-6. However, Defendants raised such arguments in their motion for summary judgment, *see* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' MSJ Mem."), DE [36-1], at 14-16, and Judge Wexler correctly concluded that Plaintiff made out a *prima facie* retaliation claim and that issues of material fact remain with respect to this count. Initially, it is undisputed that Abreu engaged in protected activity when he reported the alleged discrimination to Verizon's Global Compliance Hotline and thereafter in a letter to Robert Connelly, a director at Verizon. The Court further agrees with Plaintiff that Defendants misconstrue the nature of Abreu's retaliation claim when they argue that the alleged adverse action occurred before he complained to Verizon. Plaintiff in fact relies upon conduct that occurred after he lodged his complaints. Indeed, there is sufficient evidence that Plaintiff was willing to return to Fire Island, but was overtly excluded from doing so by an individual or individuals who were aware of Abreu's complaints, and that such an exclusion, among other actions, constituted a material adverse change in his employment status based upon his loss of overtime income. Thus, there are questions of fact as to whether Plaintiff suffered an adverse employment action and whether there existed a causal connection between the protected activity and the alleged adverse employment action. Additionally, the reasons offered by Defendants

for their actions are called into question by evidence demonstrating that a number of white comparators were treated more favorably than Abreu was treated. Accordingly, Defendants' motion seeking reconsideration of Judge Wexler's ruling regarding Plaintiff's retaliation claim lacks merit.

        2. Discrimination Claim

Next, Defendants argue that summary judgment dismissing Abreu's discrimination claim is appropriate because: (i) Plaintiff was not subject to an adverse action; (ii) Abreu failed to identify appropriate comparators; (iii) Plaintiff relies on unsupported or speculative allegations; (iv) Abreu relies on inadmissible time-barred and hearsay evidence; (v) Plaintiff's claims with respect to overtime are baseless; and (vi) Defendants proffered a legitimate, non-discriminatory reason for Abreu's reassignment. *See* Defs.' Mem. at 7-12. Again, Defendants' arguments raise nothing new, *see* Defs.' MSJ Mem. at 6-14, and a number of material facts regarding this claim remain in dispute. Plaintiff has submitted, or is able to submit, admissible evidence that he was subjected to adverse employment action, including, but not limited to, Verizon's refusal to return Abreu to Fire Island. Evidence proffered by Plaintiff likewise supports his claim that he was treated in a discriminatory manner as compared to similarly-situated white employees of Verizon. In addition, based on that evidence, questions of material fact exist as to whether Verizon's alleged reason for reassigning Abreu was pretextual. Thus, Defendants have raised no legitimate basis to disturb Judge Wexler's decision with respect to Plaintiff's discrimination claim.

### 3. Hostile Work Environment Claim

Once again rehashing arguments that were previously made and rejected by Judge Wexler, *see* Defs.' MSJ Mem. at 16-18, Defendants contend that the Court overlooked the fact that Abreu's allegations of a hostile work environment fail to raise a dispute of material fact. *See* Defs.' Mem. at 12-13. This assertion, however, is wholly belied by the record, which contains sufficient evidence from which a jury could conclude that Plaintiff was subjected to repeated offensive, threatening, and harassing discriminatory conduct. In addition, Abreu has presented evidence that Verizon orchestrated, or at least permitted, such conduct. Plaintiff has, moreover, offered proof that he has suffered psychological harm due to Defendants' actions. Therefore, Defendants' arguments in support of their motion for reconsideration of Judge Wexler's ruling on Abreu's hostile work environment claim are unconvincing.

### 4. Constructive Discharge Claim

Finally, Defendants argue that the Court overlooked undisputed facts refuting Plaintiff's claim for constructive discharge, "namely[,] that Plaintiff took a retirement package and was waiting to turn fifty in order to procure a favorable pension." *See* Defs.' Mem. at 13. However, the evidence submitted by Abreu that he was forced to retire two years earlier than he had planned, together with the evidence of repeated workplace harassment endured by Plaintiff, is sufficient to raise questions of fact regarding the claim for constructive discharge. Accordingly, the Court finds reconsideration of Judge Wexler's ruling with respect to this claim unwarranted as well.

## IV. Conclusion

For the reasons set forth above, the Court denies Defendants' motion seeking reconsideration of Judge Wexler's July 10, 2017 Memorandum and Order.

Dated: Central Islip, New York
      March 20, 2018                      **SO ORDERED**

                                                    <u>s/ Steven I. Locke</u>
                                                  STEVEN I. LOCKE
                                                  United States Magistrate Judge