SEYFARTH SHAW

Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York  10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-3332

Writer's e-mail
hwexler@seyfarth.com

**VIA ECF**

The Honorable Steven I. Locke
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    Adan Abreu v. Verizon New York, Inc. et al.
              Civ. Action No. 2:15-cv-00058 (SIL)

Dear Judge Locke:

Pursuant to Your Honor's March 20, 2019 Order, Defendants submit this letter brief in further support of their Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a)(1).[1]

**Plaintiff's Hostile Work Environment Claim Should be Dismissed**

Plaintiff has not met his burden on his hostile work environment claims and judgment of a matter of law should be granted.  The standard is both subjective and objective, and Plaintiff must show the harassment is both severe and pervasive, and the conduct occurred because of Plaintiff's protected characteristic.   *Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (internal citations omitted); *Lambert v. Macy's E., Inc.*, 34 Misc. 3d 1228(A), 951 N.Y.S.2d 86 (Sup. Ct. 2010), *aff'd*, 84 A.D.3d 744, 922 N.Y.S.2d 210 (2d Dep't 2011); *Johnson v. IAC/ Interactive Corp.*, 2 F. Supp. 3d 504, 516 (S.D.N.Y. 2014).  Plaintiff must also show that Verizon affirmatively encouraged, condoned, or approved the alleged hostile conduct to prove a claim under the New York State Human Rights Law.  *Durkin v. Verizon New York, Inc*., 678 F. Supp. 2d 124, 136 (S.D.N.Y. 2009) (under the NYSHRL, an "employer cannot be held liable . . . for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.") (internal quotations and citation omitted).

Plaintiff had *one* interaction with both Lucas and Bolger during the entirety of his employment. (Transcript ("Tr.") 730:15-24.)  Plaintiff admits that he had no contact with any of the

---

[1] Defendants address only Plaintiff's hostile work environment, constructive discharge, and retaliation claims against Richard Francis ("Francis"), pursuant to the Court's directive.  Defendants reserve the right to renew their motion with respect to the remaining claims in accordance with Fed. R. Civ. P. 50(a)(1).



The Honorable Steven I. Locke
March 20, 2019
Page 2

three individual defendants after he was reassigned to the mainland in July 2012, and that at no time did any of them make a comment to him based on his race, color or ethnicity. (Tr. 729:5-730:3.) Further, Plaintiff testified that he "had a good relationship with everyone" on the mainland upon his return in July 2012, including his two foremen, Christie and Farrington. (Tr. 730:8-14.) As such, Plaintiff cannot establish a hostile work environment claim. *Winkfield v. City of New York*, 1999 WL 1191544, at *3 (S.D.N.Y. Dec. 15, 1999) (in order for "racist comments, slurs and jokes to constitute a hostile work environment, there must 'be more than a few isolated incidents of racial enmity,' . . . there must be a steady barrage of opprobrious racial comments.") (internal quotations and citation omitted).

Plaintiff alleges his co-workers drew depictions of Plaintiff in a Verizon shirt and made at least one derogatory comment. Plaintiff never complained of this conduct to anyone at Verizon or his union. (Tr. 731:1-732:21.) Plaintiff makes this admission, despite acknowledging that he had an obligation under the Verizon Code of Conduct to do so. (Tr. 748:16-24.) Even assuming this allegation is true, these at best stray remarks by Plaintiff's co-workers do not constitute harassment. *See Pezzano v. Sears, Roebuck & Co.*, No. 97-7049, 1997 WL 738071, at *3 (2d Cir. Nov. 24, 1997) (finding plaintiff's complaints that his co-workers complained about him eating his lunch at work, threw away his papers, and gave him undesirable sales leads were "petty annoyances" that "do not rise to the level of a hostile work environment" as a matter of law because "no reasonable jury would have found for [the plaintiff] on this claim"); *Amna v. New York State Dep't of Health*, No. 08-CV-2806 (CBA) (LB), 2011 WL 4592787, at **8, 14-15 (E.D.N.Y. Sept. 30, 2011), *aff'd*, 505 F. App'x 44 (2d Cir. 2012) (stray remarks, including a comment about whether plaintiff vacationed in Iraq and a co-worker laughing at an anti-Muslim joke in front of plaintiff, coupled with facially-neutral allegations, such as a transfer to a different unit, excessive supervision, and threatening to suspend plaintiff, did not constitute a hostile work environment).

Plaintiff cites *Pucino v. Verizon Wireless Commc'ns, Inc.* in support of this claim. 618 F.3d 112 (2d Cir. 2010). However, the allegedly harassing conduct in *Pucino* included "constantly" calling "Pucino a "bitch" and "stupid" and also would tell her to "go fuck herself," which is more severe than the totality of Plaintiff's allegations. *Id.* at 116. The alleged harassment that Plaintiff purports to have endured includes being subject to Verizon Work Rules (Pl. Ex. 59), the Workplace Attire policy (Defs. Ex. K), and reassignment to a less-preferred zone on Fire Island (where the testimony has established Caucasian employees were also assigned).

The totality of the conduct complained of here does not rise to the level of legally actionable hostile work environment as more egregious conduct has long been found not to be "severe" enough to state a cognizable claim. *See, e.g.*, *De La Concha v. Fordham Univ.*, 5 F. Supp. 2d 188, 190 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 843 (2d Cir. 1999) (finding racially offensive comments, including the word "spic," by plaintiff's supervisor over four or five month period, insufficient to withstand summary judgment on hostile work environment claim); *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 CIV. 10355, 2009 WL 873206, at *28 (S.D.N.Y. Mar. 31, 2009) (holding references to black females as "whores," and "sluts," and comments that "training females is like training a dog" and that "women need to be horsewhipped," among other things, amounted to no more than "mere offensive utterance[s]"); *McCoy v. City of N.Y.*, 131 F. Supp. 2d 363 (E.D.N.Y. 2001) (finding the display of a

Case 2:15-cv-00058-SIL Document 77 Filed 03/20/19 Page 3 of 4 PageID #: 2173



noose and racially offensive advertisement of an African-American man and boy with exaggerated facial expressions that a colleague posed and took pictures with, and comments of "fucking nigger" coupled with obscene gestures, were insufficient to establish a hostile environment claim); *Johnson*, 2 F. Supp. 3d at 515-17 (holding allegedly racist comments of "ghetto cut," a misidentification of an African American character, and explicit racial video content, do not rise to the level of hostile work environment under Section 1981.)

## **Plaintiff's Constructive Discharge Claims Should be Dismissed**

Plaintiff similarly cannot meet his burden for his constructive discharge claims. To demonstrate constructive discharge, a plaintiff must show that "his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily. Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions. A work environment is considered intolerable for purposes of constructive discharge when it is so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 468 (S.D.N.Y. 2006) (citing cases.) As with the hostile work environment claim, the standard is both subjective and objective. *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("[a] plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.") Clearly, based on the testimony of Thomas Bolger today (and David Lucas last week), it cannot even be argued that Defendants "intentionally" created such an intolerable atmosphere. There is no evidence in the record that Bolger made the decision to remove Plaintiff from Fire Island in order to create an intolerable atmosphere so as to force Plaintiff to retire two years later.

The fact is, Plaintiff made a calculated decision to retire in December 2014. Plaintiff testified that in order to be eligible for a lump sum buyout, as well as fully paid medical and dental insurance for he and his family, he needed to meet the "Rule of 75." (Tr. 575:1-11.) Despite turning fifty years old in August 2014, it was not until he received in the mail an Enhanced Income Protection Plan ("EIPP") several months later, which entitled him to an additional $74,426, that he decided to retire. (Pl. Ex. 63.)

In a case on all fours with the instant matter, the court dismissed plaintiff's constructive discharge claims. In *Market v. Illinois Bell Telephone Co.*, the plaintiff alleged that her supervisors made racially offensive comments. No. 01 C 3841, 2003 WL 22697284, at *1 (N.D. Ill. Nov. 13, 2013). Plaintiff was on leaves of absence at various points after the allegedly harassing conduct occurred, and applied for and received a voluntary retirement incentive prior to retiring. The plaintiff alleged "she could no longer endure the hellish environment" at her employer, and that "she felt forced out by the emotional distress intentionally heaped upon her." *Id.* at *8. In addition, the plaintiff claimed "her decision to seek that "option" was based on her sense that if she did not leave, the allegedly hostile work environment would send her over the edge," and that she had to "retire early." *Id.* Prior to her retirement, however, the supervisor who engaged in the alleged harassment had not been her supervisor for an entire year. *Id.* at *9. On this basis, the court held that no reasonable jury could find that the Plaintiff decided to retire because of behavior that occurred more than a year



before.  *Id.*  Like the plaintiff in *Market*, Plaintiff's constructive discharge claim is predicated on behavior that occurred two years before his retirement, by individuals who were either no longer with Verizon or no longer had supervisory behavior over Plaintiff, which are fatal to his claim.

Plaintiff has not met his burden of constructive discharge.  Plaintiff's admission, coupled with his voluntary acceptance of the EIPP offer, undercuts his claim of constructive discharge.  There is ample case law within the Second Circuit to support Defendants' motion.  *See Makinen v. City of New York*, 722 F. App'x 50 (2d Cir. 2018) (holding that the district court did not err in dismissing the plaintiff's constructive discharge claim under the ADA and NYSHRL where the employee, a police officer, "remained on the force for several years after her initial alcoholism diagnosis and nearly a year after the imposition of her final treatment plan, retiring only after she reached her twentieth year of service and became qualified for pension benefits"); *Borski v. Staten Island Rapid Transit*, 413 F. App'x 409, 411 (2d Cir. 2011) ("[N]o reasonable jury could conclude that a reasonable person would feel compelled to quit his job over conduct that had ceased years earlier"); *Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180, 183-84 (S.D.N.Y. 2004) (holding transfer of plaintiff to undesirable position after using the word "nigger" and other insensitive language ("we'll move you into the other office so we can get you out of the ghetto"), and placing a distorted picture of Dennis Rodman on plaintiff's desk failed to state a claim for constructive discharge.)

### Plaintiff's Retaliation Claim Against Francis Should be Dismissed

Likewise, Plaintiff's retaliation claim against Francis fails.  Francis was retired prior to the alleged adverse action, Plaintiff's removal from Fire Island, and was long-since retired during the period when Plaintiff was on the mainland and was allegedly not permitted to return to Fire Island.  The conduct Plaintiff raises in his letter all occurred years prior to Plaintiff's complaint in response to his removal from Fire Island.  As such, Defendants request that Plaintiff's retaliation claim against Francis be dismissed.

Respectfully submitted,

SEYFARTH SHAW LLP

/s/ *Howard M. Wexler*

Howard M. Wexler

cc:     Frederick K. Brewington, Esq. (via ECF)