UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ADAN ABREU,

             Plaintiff,

        - against -

VERIZON NEW YORK, INC.; DAVID LUCAS,
THOMAS BOLGER, and RICHARD FRANCIS,

             Defendants.

--------------------------------------------------------------X

ECF CASE

Docket No.: 15-CV-58 (SIL)

**ORAL ARGUMENT REQUESTED**


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE,
A NEW TRIAL OR A CONDITIONAL ORDER OF REMITTITUR**

GREENBERG TRAURIG, LLP
Alan Mansfield
Stephen L. Saxl
William Wargo
200 Park Avenue
New York, NY 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400
mansfielda@gtlaw.com
saxls@gtlaw.com
wargow@gtlaw.com

SEYFARTH SHAW LLP
Howard M. Wexler
Paul H. Galligan
Meredith-Anne M. Berger
620 Eighth Avenue, 32nd Floor
New York, NY 10018-1405
Tel.: (212) 218-5500
Fax: (212) 218-5526
hwexler@seyfarth.com
pgalligan@seyfarth.com
mberger@seyfarth.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .............................................................................................................. 3

    I.     THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF
          DEFENDANTS ON PLAINTIFF'S DISCRIMINATION CLAIM..................... 3

        A.    There Was No Legally Sufficient Proof of Any Adverse
             Employment Action. .................................................................... 3

             1.    Plaintiff Offered No Legally Sufficient Proof Of Greater
                   Opportunity For Overtime On Fire Island. ..................................... 4

             2.    The Alleged Greater Opportunity For Overtime On Fire
                   Island Was Irrelevant To Plaintiff, And So Could Not Have
                   Constituted An Adverse Employment Action. .............................. 6

        B.    There Was No Legally Sufficient Proof That Race Was A
             Motivating Factor In Plaintiff's Reassignment............................. 6

    II.    THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF
          DEFENDANTS ON PLAINTIFF'S RETALIATION CLAIM. ........................... 8

        A.    There Was No Legally Sufficient Proof That Plaintiff's Not Being
             Sent Back To Fire Island In 2013 Constituted An Adverse
             Employment Action. .................................................................... 8

         B.    There Was No Legally Sufficient Proof Of Retaliation............................. 9

    III.   THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE
          INDIVIDUAL DEFENDANTS........................................................................... 10

    IV.   THE COURT SHOULD CONDITIONALLY GRANT DEFENDANTS A
          NEW TRIAL........................................................................................................ 11

        A.    The Court Improperly Sustained Plaintiff's Objection To
             Defendants' Summation And, At Plaintiff's Urging, Did Not Cure
             The Admitted Error.................................................................................... 12

        B.    Plaintiff's Counsel's Improper Attempt To Insinuate That
             Defendants' Counsel Was Engaging In Racist Conduct Constituted
             Plain Error.................................................................................................. 14

C.      It Is Likely That The Jury Was Confused And Improperly
        Considered Evidence Of The Dismissed Claims. ..................................... 16

D.      Plaintiff Improperly Confused The Jury About The CBA........................ 18

IV.     THE JURY'S DAMAGES AWARDS CANNOT STAND. ................................. 18

A.      The Award For Lost Overtime Has No Rational Basis. ........................... 19

B.      The Emotional Distress Award Should Be Vacated Or
        Substantially Reduced............................................................................... 19

C.      The Punitive Damages Issue Should Not Have Been Submitted To
        The Jury. .................................................................................................... 21

D.      The Punitive Damages Question To The Jury Constituted Plain
        Error. .......................................................................................................... 22

E.      The Punitive Damages Award Was Excessive. ......................................... 23

CONCLUSION...................................................................................................... 26

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allam v. Meyers*,
   906 F. Supp. 2d 274 (S.D.N.Y. 2012) ......................................................................24

*Amna v. N.Y.S. Dep't of Health*,
   2011 WL 4592787 (E.D.N.Y. Sept. 30, 2011), *aff'd*, 505 Fed. Appx. 44 (2d
   Cir. 2012) ................................................................................................................5, 6

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996) ......................................................................................19, 24, 25

*Bouveng v. NYG Capital LLC*,
   175 F. Supp. 3d 280 (S.D.N.Y. 2016) ......................................................................11

*Campen v. Greenamyer*, No. 89-56050, 1991 U.S. App. LEXIS 18370 (9th Cir.
   Aug. 5, 1991) ...........................................................................................................23

*Caravantes v. 53rd St. Partners, LLC*,
   No. 09 Civ. 7821 RPP, 2012 WL 3631276 (S.D.N.Y. Aug. 23, 2012) ...................25

*Cham v. Station Operators, Inc.*, 685 F.3d 87 (1st Cir. 1988) ......................................16

*Chisholm v. Memorial Sloan Kettering Cancer Ctr.*,
   824 F. Supp. 2d 573 (S.D.N.Y. 2011) ......................................................................25

*Citizens & S. Nat'l Bank v. Bougas*,
   265 S.E.2d 562 (Ga. 1980) ........................................................................................15

*DeCurtis v. Upward Bound Int'l, Inc.*,
   No. 09 Civ. 5378, 2011 WL 4549412 (S.D.N.Y. Sept, 27, 2011) ...........................25

*Duarte v. St. Barnabas Hosp.*,
   341 F. Supp. 3d 306 (S.D.N.Y. 2018) ......................................................19, 20, 24, 25

*Dyer v. MacDougall*,
   201 F.2d 265 (2d Cir. 1952) ........................................................................................7

*Emamian v. Rockefeller Univ.*,
   No. 07 Civ. 3919 (DAB), 2018 WL 2849700 (S.D.N.Y. June 8, 2018) ..................20

*Farias v. Instructional Sys., Inc.*,
   259 F. 3d 91 (2d Cir. 2001) ........................................................................................21

*FDIC v. British-Am. Corp.*,
   765 F. Supp. 1314 (E.D.N.C. 1991) ....................................................................15, 23

*Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982) ................................................................22

*Graham v. City of New York*,
   128 F. Supp. 3d 681 (E.D.N.Y. 2015) ......................................................................19

*Harris v. Niagara Mohawk Power Corp.*,
    252 F.3d 592 (2d Cir. 2001) ............................................................................................3

*Khanna v. MUFG, Union Bank, N.A.*,
    No. 18-CV-3031 (ALC), 2019 WL 1428435 (S.D.N.Y. Mar. 29, 2019) .............................3

*Kim v. Dial Serv. Int'l, Inc.*,
    96 Civ. 3327, 1997 WL 458783 (S.D.N.Y. Aug. 11, 1997) ...........................................24

*Kolstad v. American Dental Ass'n*,
    527 U.S. 526 (1999) ......................................................................................................21

*Kopczick v. Hobart Corp.*,
    721 N.E.2d 769 (Ill. App. 3d 1999) ...............................................................................15

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012) ..........................................................................................18

*MacMillan v. Millennium Broadway Hotel*,
    873 F. Supp. 2d 546 (S.D.N.Y 2012) .......................................................................24, 25

*Neurovision Medical Products, Inc. v. Nuvasive, Inc.*,
    CV-09-6988 DSF, 2013 WL 12313400 (C.D. Cal. Apr. 9, 2013) .......................................9

*Norris v. New York City Coll. of Tech.*,
    No. 07-CV-853, 2009 WL 82556 (E.D.N.Y. Jan. 14, 2009) ............................................25

*Pappas v. Middle Earth Condo. Ass'n*,
    963 F.2d 534 (2d Cir. 1992) ..........................................................................................16

*Rainone v. Potter*,
    388 F. Supp. 2d 120 (E.D.N.Y. 2005) ............................................................................21

*Ramos v. County of Suffolk*,
    707 F. Supp. 2d 421 (E.D.N.Y. 2010) ............................................................................16

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
    30 F.3d 339 (2d Cir. 1994) ..............................................................................................7

*Shulka v. Sharma*,
    No. 07 Civ 2972 (CBA), 2012 WL 481796 (E.D.N.Y. Feb. 14, 2012) ..............................24

*Sims v. MVM, Inc.*,
    704 F.3d 1327 (11th Cir. 2013) .......................................................................................8

*Song v. Ives Labs, Inc.*,
    957 F.2d 1041 (2d Cir. 1992) ...........................................................................................3

*St. Paul & Sault Ste. Marie R.R. Co. v. Moquin*,
    283 U.S. 520 (1931) ......................................................................................................16

*State Farm Mutual Auto Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ......................................................................................................21

*Thomas v. iStar Fin., Inc.*,
    652 F.3d 141 (2d Cir. 2011) ...........................................................................................24

*Tingley Sys., Inc. v. Norse Sys., Inc.*,
    49 F.3d 93 (2d Cir. 1995)................................................................................................19

*Williams v. R.H. Donnelley Corp.*,
    368 F.3d 123 (2d Cir. 2004)............................................................................................4

**Federal Statutes**

42 U.S.C. § 1981...........................................................................................................1, 3, 22

**State Statutes**

N.Y. Exec. Law §§ 290-301 ..............................................................................................1, 3

N.Y. Exec. Law § 297(9) ....................................................................................................22

**Rules**

Fed. R. Civ. P. 50 ...................................................................................................... *passim*

Fed. R. Civ. P. 59 ...................................................................................................... *passim*

Judgment in favor of Defendants[1] should be entered as a matter of law under Rule 50 because there was no legally sufficient evidence of an adverse employment action or racially discriminatory motive, and the purported retaliation was inherently unsound and unproven.[2]

Even if there had been legally sufficient evidence, which there was not, a new trial would be required under Rule 59. The verdict is inconsistent with the weight of the evidence, and was the product of manifest injustice, cumulative errors, and an inflamed, run-away jury. Lacking any evidence of Defendants' racially discriminatory motive or conduct, counsel for Plaintiff Adan Abreu, a retired Verizon Field Technician, attempted to fill that void by mischaracterizing Defendants' counsel's conduct and improperly asking the jury to punish Defendants for the alleged conduct of their trial counsel. More particularly, Plaintiff's counsel began his rebuttal by unfairly accusing Defendants' counsel of racism (Tr. 1262:17-24), and concluded his rebuttal by stating: "What they did and they said in their closing deserves punitive damages. Don't be bound by my number." (Tr. 1272:8-10). Plaintiff's counsel's impermissible rebuttal attack on Defendants' counsel invited error. The jury did just what Plaintiff's counsel asked: It awarded the legally and factually unsustainable sums of $1.85 million in punitive damages (virtually double the amount Plaintiff requested in his principal summation), $750,000 in emotional distress damages, and $55,000 in allegedly lost overtime.

---

[1] Defendants Verizon New York Inc. ("Verizon"), David Lucas, and Richard Francis (collectively, the "Defendants") respectfully submit this memorandum in support of their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, or, in the alternative, a new trial or a conditional order of remittitur pursuant to Rule 59. The jury found Defendant Thomas Bolger not liable. The trial transcript ("Tr.") and exhibits ("Ex.") hereto are submitted with the accompanying Declaration of Howard M. Wexler.

[2] The Court dismissed Plaintiff's claims for constructive discharge and hostile work environment pursuant to Rule 50(a) prior to summations. (Tr. 1133, 1137). Plaintiff was awarded damages on his discriminatory conduct and retaliation claims under Title VII, 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law ("NYSHRL"), along with punitive damages.

This unfathomable verdict was based on claims that could not have been more thin—the only alleged adverse employment action was the supposed loss of greater overtime opportunity as the result of an intra-area reassignment from Fire Island to the mainland, and the alleged retaliation was in not reversing that reassignment. Based on the full trial record, Plaintiff's claims are not legally sustainable and should be dismissed under Rule 50.

First, Plaintiff's method of proving lost opportunity for greater overtime was unsound. The only competent evidence adduced at trial plainly contradicted the theory. Moreover, the evidence showed that Plaintiff chose to stop working overtime even before the reassignment and did not want or seek overtime (except incidentally to finish a job) after he was reassigned.

Second, there is no proof of management's expressing any racial animus. While it would be theoretically possible to prove discrimination on an intra-area reassignment by circumstantial evidence, there is no such proof on this record. The only individual to whom Plaintiff attributed a discriminatory motive, Francis, was gone by the time of the reassignment; Lucas no longer supervised Plaintiff once he was reassigned to the mainland; and the jury found Bolger did not violate any laws. Last, the retaliation claim—that Verizon did not reverse the allegedly discriminatory reassignment—is factually and logically unsustainable.

If the case survives Rule 50, the Court should order a new trial under Rule 59 because cumulative errors resulted in an inexplicable and unsustainable jury verdict. The trial record is infected with improper arguments by Plaintiff's counsel and irrelevant testimony and argument ostensibly pertinent to the hostile work environment and constructive discharge claims, which the Court dismissed prior to summations. While the record was probably incurable, necessitating mistrial, at a minimum a clear instruction striking evidence irrelevant to the claims that remained

in the case was essential. In any event, Plaintiff should not have marshalled evidence relating to the dismissed claims in his closing arguments, which is exactly what he did.

Finally, if the Court does not grant judgment as a matter of law or a new trial, Second Circuit authority requires the Court to enter a conditional order of remittitur, as the jury's award far exceeds constitutionally and legally permissible amounts. Any such remittitur should be at the lowest range of garden variety emotional distress damages. Punitive damages should be vacated altogether, as there is no evidence to support entitlement to punitive damages and no conceivable rational basis to support doubling the dream number Plaintiff asked for in closing before urging the jury not to feel bound by his number and to punish Defendants for their counsel's summation.

## ARGUMENT

### I.   THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S DISCRIMINATION CLAIM.

Judgment as a matter of law should be granted when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find in the non-moving party's favor on that issue. Fed. R. Civ. P. 50(a)(1).[3]

### A.   There Was No Legally Sufficient Proof of Any Adverse Employment Action.

The Court should enter judgment as a matter of law for Defendants because there was no legally sufficient proof of any adverse employment action, an essential element of all of Plaintiff's claims under Title VII, Section 1981 and the NYSHRL. *See Khanna v. MUFG, Union Bank, N.A.*, No. 18-CV-3031 (ALC), 2019 WL 1428435, at *4 (S.D.N.Y. Mar. 29, 2019).

---

[3] All reasonable inferences must be drawn in favor of the non-moving party. *Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 597 (2d Cir. 2001). Where, as here, a party renews its motion for judgment as a matter of law after the jury reaches a verdict, a court may set aside the jury's verdict if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or such an overwhelming amount of evidence in favor of the moving party that a reasonable jury could not have found in the non-moving party's favor. *Song v. Ives Labs, Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992).

### 1.    Plaintiff Offered No Legally Sufficient Proof Of Greater Opportunity For Overtime On Fire Island.

The only theory of adverse action on which Plaintiff went to the jury was the lost opportunity for greater overtime.[4] But Plaintiff offered no legally sufficient proof that there was greater opportunity for overtime on Fire Island than on the mainland. Plaintiff's perception that a greater opportunity existed does not substitute for the provable fact of whether there was such greater opportunity. Plaintiff could have attempted to prove this through Verizon records, but he did not do so. Indeed, the only competent evidence on this issue was the testimony of defendant Bolger, the management witness with knowledge and responsibility for approving overtime on Fire Island and at the mainland garage to which Plaintiff was assigned. Bolger testified, "based on [his] responsibility to manage the overtime budget, as well as to report it to the finance department," (Tr. 1000:21-24), that while the amount of overtime on Fire Island "during the summer months … could exceed other areas on the mainland," "the overtime spent on both mainland and Fire Island … was very similar," (Tr. 999:13-23), and there was not "more overtime available in the course of a year on Fire Island as compared to the mainland" (Tr. 999:9-12). Indeed, Verizon had an obligation under the Collective Bargaining Agreement to equalize overtime between those areas, and there were no grievances claiming Verizon had not met that balance goal. (Tr. 356:1-18; 357:7-13; 360:3-6).

All Plaintiff offered to support his illusory overtime theory were inapposite comparisons of his yearly W-2s and unsubstantiated perceptions that greater overtime was available. Plaintiff

---

[4] The Court recognized that the intra-area reassignment from Fire Island to the mainland was not itself adverse. (Tr. 1292:23-25). Plaintiff admitted it was not a promotion or transfer (Tr. 677:14-15, 824:2-11), and the Court found it was not a demotion. "Subjective disappointment in one's reassignment does not constitute an adverse employment action," as the Court instructed the jury. (Tr. 1292:23-25). *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("subjective, personal disappointments do not meet the objective indicia of an adverse employment action"). There was no competent evidence Fire Island was a more prestigious assignment. (Tr. 940:8-14).

admitted that the only documentation he had to support his claim were his W-2s and his tax returns. (Tr. 737:9-11, 741:7). But Plaintiff's W-2s could not prove there was greater opportunity for overtime on Fire Island. Plaintiff's argument in summation that the jury "can see the difference from year to year" (Tr. 1213:14-15) was thoroughly misleading. Plaintiff's W-2s reflected long periods of disability after his reassignment (Tr. 743:6-10, 761:25-762:1-2) and, as he admitted, his own decision not to volunteer for overtime on the mainland because he just wanted to work eight hours (Tr. 743:11-24).[5] Comparing aggregate annual compensation in his W-2s thus proves nothing about the opportunity for overtime in the different locations.

Further, the total sums in the W-2s did not itemize overtime so there was no competent proof of what his overtime was at any time. Plaintiff could have offered overtime records or competent testimony about Field Technicians' salaries and overtime during relevant years, but he did not. Instead, Plaintiff simply put W-2s in front of the jury, and had it guess as to his overtime.

The unsubstantiated perceptions of Plaintiff and certain of his co-workers that greater overtime was available on Fire Island (Tr. 412:17-23, 505:24-25, 506:1-8) were not competent or sufficient evidence; rather, they lacked foundation and were speculation. Indeed, Plaintiff admitted that while there may have been more overtime available on Fire Island in summer, there was less in winter. (Tr. 669:16-670:2). *See Amna v. N.Y.S. Dep't of Health*, 2011 WL 4592787, at *7 (E.D.N.Y. Sept. 30, 2011), *aff'd*, 505 Fed. Appx. 44 (2d Cir. 2012) (plaintiff "has failed show that her allegation of unequal overtime opportunities is anything more than unsupported speculation"). Because Plaintiff's proof of greater opportunity for overtime was legally insufficient to support a claim of adverse employment action, judgment should be entered for Defendants.

---

[5] At least one period of disability was not approved, leading to no pay for an extended period of months. (Tr. 763:5-7). This was why his final W-2 for 2014 showed lower pay than 2012. (Tr. 763:8-14).

2. **The Alleged Greater Opportunity For Overtime On Fire Island Was Irrelevant To Plaintiff, And So Could Not Have Constituted An Adverse Employment Action.**

Even if the record supported a conclusion that there was greater opportunity for overtime on Fire Island—and it does not—Plaintiff could not claim that this constituted an adverse employment action *as to him*. Plaintiff admitted that he stopped taking overtime on Fire Island in 2012 prior to his reassignment to the mainland (Tr. 542:13-15), and then did not take the available overtime on the mainland after his reassignment (Tr. 743:11-24). To an employee who wanted to work only eight hours per day, reassignment to an area allegedly offering less opportunity for overtime could not have been an adverse employment action. *See Amna*, 2011 WL 4592787, at *7 (in rejecting overtime claim as speculative, court observes plaintiff "conceded in her deposition that she never requested any additional overtime").

B. **There Was No Legally Sufficient Proof That Race Was A Motivating Factor In Plaintiff's Reassignment.**

The Court should also enter judgment in favor of Defendants on Plaintiff's discrimination claims because there was no legally sufficient proof that race was a motivating factor in Plaintiff's reassignment (much less a "but for" cause). Plaintiff conceded that he twice violated Verizon's attire policy. (Tr. 471:19-22; 474:8-475:7). There was no evidence of racial animus connected to the reassignment. All the evidence was that the reassignment was done for reasons entirely unrelated to race.

As testimony demonstrated, reassignments are discretionary. Given limited supervision on Fire Island, management's preference is for employees there to be ones they trust. (Tr. 995:5-24). Bolger reassigned Plaintiff after Bolger caught Plaintiff violating the Workplace Attire Policy and then Lucas caught Plaintiff violating the exact same Policy within two weeks. Recognizing that there was no evidence of racial animus in this decision, the jury found Bolger not liable, including not to have been personally involved or to have aided and abetted any discriminatory conduct.

(Ex. P at 2). Thus, there is no basis for concluding that Verizon could be liable for discriminatory reassignment. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("corporation can only function through its employees and agents").

There also is no evidence to infer that race was a motivating factor for Lucas, who reported to Bolger. Plaintiff's attempt to rely on a "cat's paw" theory of liability is not legally or factually sustainable. Plaintiff suggested that Francis had long-standing animus towards Plaintiff, which Plaintiff claimed was racially motivated. Francis was no longer responsible for Fire Island at the time Plaintiff was reassigned to the mainland. (Tr. 51:24-25, 52:1-4). Unlike a viable "cat's paw" case, there is no evidence that anything Francis did determined the subsequent decision to reassign Plaintiff. To the contrary, the only evidence was that Lucas never talked to Francis about Plaintiff and was not aware that Francis supposedly wanted Plaintiff off the island. (Tr. 59:3-6).[6]

Indeed, even the evidence by which Plaintiff purported to attribute racial motivation to Francis—the only evidence offered to show racial animus by anyone in Verizon management—related to time-barred, uncorroborated events allegedly occurring more than a decade earlier. (Tr. 443:1-23). That evidence should have been excluded as irrelevant and unduly prejudicial. But even if it had been properly admitted and suggested racial animus by Francis, there is no evidence to support a "cat's paw" attempt to link Francis's motivation to the decision by others to reassign Plaintiff in 2012. Even if the jury did not believe Lucas and Francis that they never talked about Plaintiff, there is no competent evidence in support of the proposition that they did do so.

Nor did the comparator evidence provide Plaintiff with the circumstantial evidence necessary to support a finding that race was a motivating factor. The evidence showed that various

---

[6] Plaintiff may argue that the jury was free to disbelieve testimony that Lucas never talked to Francis about the reassignment, but the jury is not free to believe the opposite of what they testified to without competent evidence. *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) (Hand, J.).

comparators were reassigned from Fire Island for comparable infractions. (Tr. 148:15-23, 327:2-329:18). While Plaintiff relied on testimony that other employees on Fire Island did not wear their uniform shirts at times, there was no evidence that Verizon management became aware of such conduct by similarly situated, customer-facing employees.[7]

## II.    THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S RETALIATION CLAIM.

### A.    There Was No Legally Sufficient Proof That Plaintiff's Not Being Sent Back To Fire Island In 2013 Constituted An Adverse Employment Action.

By the time the case was submitted to the jury, Plaintiff's retaliation claim rested solely on the theory that, in retaliation for complaining about his reassignment to the mainland, he was not sent back to Fire Island. This is tantamount to claiming that following a demotion, the decision not to promote is in retaliation for complaining about the demotion, and is not legally sustainable.

In any event, judgment should be entered in favor of Defendants on Plaintiff's retaliation claim because the alleged decision not to send him back to Fire Island in Spring, 2013 or thereafter could not have been an adverse employment action. As shown above (Point I(A)), Plaintiff failed to offer sufficient evidence that Fire Island offered greater opportunity for overtime than the mainland, and Plaintiff did not want or take advantage of the opportunity for overtime.

Indeed, Plaintiff failed to prove that there was *any* employment action in 2013 or thereafter. Plaintiff admitted that he did not make any formal request to be reassigned back to Fire Island; he made only an informal request to the shop steward (Tr. 735:1-5). Plaintiff did not file a grievance

---

[7] While it is not apparent that "cat's paw" can apply to a Section 1981 claim, even if it did, Plaintiff would still have to meet the "but for" standard of causation. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1336-37 (11th Cir. 2013) (cat's paw theory cannot dilute "but for" causation requirement of statute). Plaintiff would have to prove that that a supervisor's racial animus was the "determinative influence" on the alleged adverse employment action, not merely that the animus "tainted" the action. *Sims*, 704 F.3d at 1327. Even if Plaintiff had evidence establishing that racial animus of some supervisor influenced his reassignment, there is no evidence such animus was determinative.

(Tr. 734:24-25), though he has erroneously claimed in this case that not sending him back to Fire Island was a violation of his seniority rights (Tr. 734:17-23). Thus, Plaintiff's not being reassigned back to Fire Island was not an employment action, much less an adverse one.

**B.    There Was No Legally Sufficient Proof Of Retaliation.**

Judgment should be entered for Defendants for the additional reason that Plaintiff offered no evidence whatsoever that the alleged decision not to reassign him back to Fire Island was in retaliation for a complaint, as opposed to a continuing consequence of the decision to reassign him to the mainland in 2012. Plaintiff was required to prove that "but for" an alleged complaint, he would have been sent back to Fire Island. (Tr. 1297:6-13). However, Plaintiff offered no such evidence, and there is no basis for inferring that Plaintiff was not sent back to Fire Island because he complained.

Further, the evidence confirmed that because of the trust issues, Defendants Lucas and Bolger never sent anyone back to Fire Island once they had been reassigned to the mainland as a result of infractions of Verizon policy, whether that person was removed by them or a different manager. (Tr. 353:18-354:2; 1008:8-10). This is further reason to conclude that there was no basis to infer retaliation for a complaint, as opposed to the continuing effect of the original reassignment decision. Indeed, the evidence showed that all the comparators removed from Fire Island for violating Verizon policy were not sent back. The only individual Plaintiff could point to who was permitted to return to Fire Island was Chris Riordan. However, as Judge Wexler originally found in excluding evidence about Riordan from the original 2017 mistrial, Riordan is not a proper comparator as a matter of kind. (Tr. 55:2-23, July 11, 2017). Under law of the case, it was error upon retrial to reverse an identical evidentiary ruling made during the first trial, barring clear error or a change of circumstances, neither of which was present here. *Neurovision Medical Products, Inc. v. Nuvasive, Inc.*, CV-09-6988 DSF, 2013 WL 12313400, at *1 (C.D. Cal. Apr. 9, 2013). The

events involving Riordan did not involve an issue of trust or a manager observing an infraction of Verizon policy. Rather, Riordan received a government citation and was temporarily removed from Fire Island during the pendency of that proceeding. He was permitted to return to Fire Island once the case was resolved. The evidence relating to Riordan should have been excluded, in which case Defendants would not have called him as a witness, but in any event it does not provide any basis for inferring that Plaintiff was not reassigned to Fire Island in retaliation for a complaint.[8]

### III.   THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF THE INDIVIDUAL DEFENDANTS.

In addition to the reasons set forth above applicable to all Defendants (Points I and II), the Court should enter judgment in favor of the two remaining individual Defendants because there is no basis for holding them individually liable for discriminatory conduct or retaliation.

Francis was in the process of retiring and was no longer responsible for Fire Island prior to Verizon's decision to reassign Plaintiff to the mainland in 2012. (Tr. 51:24-25, 52:1). There was not a shred of evidence that Francis had anything to do with the reassignment decision, directly or indirectly.[9]

The Court should enter judgment in favor of Lucas because the evidence could not support the jury's verdict against him. Even if Lucas suggested to Bolger, his boss, that Plaintiff be reassigned, the decision was Bolger's to make. Bolger testified that he, not Lucas, decided to reassign Plaintiff. (Tr. 995:8-10). The jury found that Bolger was not involved in and did not aid and abet discriminatory conduct, and thus there is no basis to hold Lucas liable. Moreover, there was no evidence that race motivated Lucas, or that Francis's alleged discriminatory motive could

---

[8] The jury focused on Riordan as is demonstrated by the fact that they asked about the events involving him during deliberations. (Tr. 1319:6-8).

[9] Further, insofar as Francis was found liable under Section 1981, a "but for" standard of proof applies to the claim. Thus, even if there were evidence that Francis influenced the reassignment decision (and there is none), there is no evidence Francis "determined" that decision.

be imputed to Lucas. As to retaliatory conduct, Lucas was no longer Plaintiff's supervisor after Plaintiff's 2012 reassignment, and thus was not his supervisor when the alleged retaliatory act of not sending him back to Fire Island would have occurred. There is no evidence Lucas was involved in such a decision, or of any link between Lucas and Fredrickson, Plaintiff's mainland supervisor who would have made the decision not to send him back to Fire Island. Moreover, there is no rational basis for the jury's verdict that Lucas was responsible for any retaliation against Plaintiff because Lucas was no longer responsible for him after his return to the mainland. (Ex. L).

## IV. THE COURT SHOULD CONDITIONALLY GRANT DEFENDANTS A NEW TRIAL.

In addition to entering judgment as a matter of law for all Defendants, the Court should also conditionally grant a new trial pursuant to Rule 59. The weight of the evidence does not support the jury's inexplicable verdict and a new trial would be required.[10] Given the exceedingly thin adverse action claimed, and the absence of any direct evidence of racial discrimination, it is impossible to review the trial record without concluding that Plaintiff's counsel inflamed the jury so much that it issued awards far beyond that which could be reasonable. What inflamed the jury can also be assessed on the record, including from closing arguments.

The jury found that Bolger, Plaintiff's second line supervisor, who made the decision to reassign Plaintiff to the mainland, was not liable, but the company was liable, as was Francis, who was gone prior to the decision, and Lucas, who was subordinate to Bolger and only spoke with Plaintiff once. (Tr. 275:24-25; 276:1-12). The astronomical awards for emotional distress and punitive damages bear no relationship to the facts of this case.

---

[10] A new trial may be granted if the Court concludes "that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice, *i.e.*, it must view the jury's verdict as 'against the weight of the evidence.'" *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 310 (S.D.N.Y. 2016). The Court can weigh the evidence and need not view it in the light most favorable to plaintiff. *Id*.

It appears that Plaintiff's counsel's improper attempt to demonize the company succeeded. Impermissible evidence and statements by Plaintiff's counsel at trial—to make up for the lack of evidence of race discrimination—confused and inflamed the jury and produced an unsustainable result. Indeed, Plaintiff's counsel expressly asked the jury to punish Defendants for their counsel's supposed conduct at trial, a patently improper plea.

Cumulative prejudicial errors, including the absence of proper clarifying instructions made necessary by Plaintiff's arguments, resulted in an unfair trial and result. Though these cumulative issues are addressed individually below, they are inextricably intertwined and resulted in a miscarriage of justice and a verdict against the weight of the evidence. While each of these issues alone might suffice to warrant a new trial, collectively they compel that result.

### A.     The Court Improperly Sustained Plaintiff's Objection To Defendants' Summation And, At Plaintiff's Urging, Did Not Cure The Admitted Error.

Plaintiff baselessly objected during a critical point in Defendants' summation, and the Court, at Plaintiff's urging, improperly sustained Plaintiff's objection. The Court subsequently acknowledged this material error, but, again at Plaintiff's urging, did nothing to attempt to cure it. This error, individually and cumulatively with other related errors, requires a new trial.

Plaintiff never heard any Verizon supervisor call him a racial slur and there was no evidence of race as a motivating factor in Plaintiff's 2012 reassignment from Fire Island. Instead, during his direct testimony, Plaintiff resorted to name-calling instead of facts to supply a racially discriminatory motive. When asked "when [Francis] told you that, what did you think," Plaintiff answered, "I hate to say that I thought he was a racist, that he saw me different." (Tr. 482:17-20).

In summation, Defendants' counsel was compelled to take on this unsupported assertion, as it was the only "evidence" of discriminatory motive by a Verizon supervisor in the case. Thus, early on in his summation, Defendants' counsel recounted: "He called my clients racists." (Tr.

1220:6). The Court improperly sustained Plaintiff's counsel's objection. (Tr. 1220:7-8). Defendants' counsel reminded the Court of Plaintiff's testimony (Tr. 1221:4-6), and the Court recalled Plaintiff using the word "racist" in his testimony (Tr. 1221:12-14). But Plaintiff's counsel then erroneously claimed at sidebar that Plaintiff did not so testify, stating, "it has to be within the facts, and if I'm wrong, I'll be wrong. But I don't remember that being said." (Tr. 1221:8-1222:1). Counsel was wrong.

Plaintiff's counsel then compounded this error by exploiting it—when Defendants had no opportunity to respond—misleadingly asserting at the end of his rebuttal that Plaintiff "never called anybody a racist." (Tr. 1272:2-3). Following that inaccurate and improper statement at the end of Plaintiff's rebuttal, Defendants' counsel immediately raised this issue with the Court and read to the Court from the transcript of Plaintiff's testimony. (Tr. 1273-1277). Defendants requested that the jury be told "what was said here" by the Plaintiff. (Tr. 1274:14-15). Recognizing that "[t]here is no way to turn back the clock on closings," (Tr. 1277:6-7), the Court suggested that it attempt to cure the error by reading Plaintiff's testimony into the record to clarify it for the jury. (Tr. 1275:4-5, 13-15). But Plaintiff objected. (Tr. 1277:16-17). The Court then improperly declined to correct the mistake it had acknowledged in sustaining the objection during summation, stating that a "mistake was made. I don't know how to fix this without doing more harm than good, frankly." (Tr. 1276:23-24). The Court stated that "at this point you have your record." (Tr. 1276:22). "So the only thing I will tell you is you are correct. I misremembered. Mr. Brewington misremembered more." (Tr. 1277:2-4).

Objections during closing attract undue attention, and erroneously sustaining Plaintiff's objection on an issue of racism, the central issue in the case, sent a powerful message to the jury. Plaintiff's counsel turned the tables on Defendants and made Defendants' counsel look

reproachable for claiming that Plaintiff called Defendants "racists," as opposed to being permitted to point out that Plaintiff's name-calling was the only supposed evidence of racial motive. Plaintiff's counsel compounded this error by mischaracterizing the record in rebuttal. This series of events alone requires a new trial. To the extent there is any doubt, as explained below, Plaintiff's counsel's further attempt to supply racially discriminatory motive and grounds for punishment by pointing to Defendants' counsel's conduct made the problem far worse.

### B.    Plaintiff's Counsel's Improper Attempt To Insinuate That Defendants' Counsel Was Engaging In Racist Conduct Constituted Plain Error.

Plaintiff's counsel began and ended his rebuttal summation by insinuating that Defendants' counsel had engaged in racist conduct and, impermissibly asked the jury to punish Defendants for this supposed conduct. This was an improper attempt to supply the racial motivation missing from Plaintiff's case and inflame the jury. There is a high probability that the jury was impacted by these improper statements on the issue of racism, particularly because the statements were made at the beginning and end of Plaintiff's rebuttal summation. The otherwise inexplicable jury verdict and grossly excessive jury awards confirm Plaintiff's counsel achieved his goal of inflaming the jury.

Specifically, Plaintiff's counsel began his rebuttal summation with the following words:

> This is not about circus animals. One might say, oh, don't be too sensitive. In a case like this you need to be careful how you talk about and what you say. Mr. Abreu, he's a wonderful man, and any analogy to a circus or him performing or me having a song and dance is an affront, and I'm calling it. And at this point, ladies and gentlemen, you saw and heard what they think of Mr. Abreu even after all of this.

(Tr. 1262:17-24).

There was nothing subtle about this appeal to the jury, which was plain error. Plaintiff's counsel's argument can only be construed as an unfair and improper accusation of racism against Defendants' counsel and an attempt to impute that racism to Defendants.

Contrary to Plaintiff's counsel's suggestion, in invoking Yeats' poem "The Circus Animal's Desertion," Defendants' counsel did not "analogize" Plaintiff to a "circus animal."

Defendants' summation was quite clear about what the "circus animals" were: "We could know them as fake themes or red herrings." (Tr. 1219:9-10). Plaintiff is "trotting out his circus animals [] [b]ecause he has no facts." (Tr. 1219:13). "I saw the following circus animals in this case," Defendants' counsel said before listing themes he identified as fake. (Tr. 1219:16-1220:1).

Plaintiff's counsel's admonition that Defendants' counsel "need to be careful how you talk about and what you say"—minutes after the Court sustained Plaintiff's improper objection to Defendants' reference to Plaintiff calling Defendant "racist"—and his statement that this "is an affront, and I'm calling it," (Tr. 1262:18-22), was an unequivocal insinuation of racism. Plaintiff's counsel attempted to attribute that racism to Defendants, stating in the next sentence: "And at this point, ladies and gentlemen, you saw and heard what they think of Mr. Abreu even after all of this." (Tr. 1262:22-24). Counsel said they "treat him as though he's a circus animal." (Tr. 1264:1).

Following that start, the conclusion to Plaintiff's rebuttal leaves no doubt what Plaintiff's counsel was doing was plain error. Plaintiff's counsel ended by stating: "What they did and said in their closing deserves punitive damages. Don't be bound by my number." (Tr. 1272:8-10). These were the last two sentences of Plaintiff's rebuttal—immediately prior to the jury charge, leaving no opportunity for Defendants to respond. This is a facially improper appeal to the jury to award damages based on the conduct of Defendants' counsel. *FDIC v. British-Am. Corp.*, 765 F. Supp. 1314, 1329 (E.D.N.C. 1991) (punitive damages are available for underlying conduct on which lawsuit is based; "[t]hey are not intended to redress misconduct occurring during the litigation process").[11] Indeed, Plaintiff's counsel expressly tied counsel's conduct to punitive

---

[11] *See also Kopczick v. Hobart Corp.*, 721 N.E.2d 769, 799 (Ill. App. 3d 1999) ("Punitive damages ... are not to be awarded as a sanction for a party's misconduct during litigation.") (internal citations omitted); *Citizens & S. Nat'l Bank v. Bougas*, 265 S.E.2d 562, 563 (Ga. 1980).

damages, and went so far as to say the jury should award more than the already-unsustainable sum of $950,000 in punitive damages Plaintiff asked for in his principal summation (Tr. 1216:1-2).

The jury followed suit and rendered an extraordinary and grossly excessive award of $1.85 million in punitive damages, almost double the amount Plaintiff had suggested. There is no doubt that Plaintiff's counsel succeeded in his effort to inflame the jury. *Ramos v. County of Suffolk*, 707 F. Supp. 2d 421, 428-29 (E.D.N.Y. 2010) (would be plain error not to grant motion for new trial based on counsel's inflammatory statements made in closing).[12]

### C. It Is Likely That The Jury Was Confused And Improperly Considered Evidence Of The Dismissed Claims.

In addition, the jury was likely confused and improperly left to consider evidence of alleged constructive discharge and hostile work environment because the jury was never instructed to disregard that evidence or those claims after they were dismissed. This too requires a new trial.[13]

The Court told the jury in its Preliminary Instruction that Plaintiff claimed to have been "constructively discharged." (Tr. 4:24). Plaintiff opened on constructive discharge (Tr. 25:7-13), a far more serious claim than lost overtime opportunity. Constructive discharge was Plaintiff's theme throughout trial, including Plaintiff's testimony on damages. (Tr. 575:1-14; 577:9-16). Prior to summations, the Court dismissed the constructive discharge and hostile environment claims under Rule 50(a) for lack of sufficient evidence, finding there was nothing "severe" or "pervasive" or objectively "intolerable" in the record. (Tr. 1131:5-7, 1135:15-18). Notwithstanding that

---

[12] *See also St. Paul & Sault Ste. Marie R.R. Co. v. Moquin*, 283 U.S. 520, 521 (1931) (verdict influenced by appeals to passion and prejudice set aside); *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992) ("when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted").

[13] *Cham v. Station Operators, Inc.*, 685 F.3d 87, 97-98 (1st Cir. 1988) (affirming trial court's decision to grant new trial because most of the prejudicial evidence came in on dismissed claims, despite defendant not having asked for limiting instruction on dismissed claims).

dismissal, Plaintiff disregarded the Court's ruling by improperly closing on constructive discharge.

For example, his counsel argued:

--"If he didn't have to be here and didn't have to endure what he endured to leave that job where he was for half of his life, he would do it in a heartbeat." (Tr. 1267:19-1267:22).

--"It leaves us, ladies and gentlemen, to the point where they have injured this man, and they injured him in a way where they need to understand that when you take a person of his stature, who's been there 27 and a half years, who's working toward a goal, who was working not just until 50, *he wanted to work until 60*, but in this situation, ladies and gentlemen, what they did was, they took opportunity away from him." (Tr. 1212:25–1213:8) (emphasis added).

--Plaintiff's counsel also compared Plaintiff to Riordan, who "had a chance to finish out his time, 33 years,..." (Tr. 1190:19-23).

Prior to the closing arguments, the jury heard much evidence which could have related to only the constructive discharge or hostile work environment claims. For example, Plaintiff testified about racist graffiti he allegedly saw written on the wall of a rest room or telephone box after his reassignment. (Tr. 539:13–540:13). In concluding that the evidence was insufficient to support a hostile work environment claim, the Court found "no evidence that anyone in management either made these racially charged statements or knew about them." (Tr. 1132:15-16). Yet despite the admission of such evidence and Plaintiff's improper references during summation, the Court did not instruct the jury that the constructive discharge and hostile environment claims were out of the case, or that the jury should disregard evidence on those claims. This was plain error in the context of this case. Indeed, the Court declined to give Defendants' proposed instruction that: "You may not award the plaintiff damages for any emotional distress caused by other factors such as personal or family difficulties, medical problems or *his decision to retire*." (Ex. M) (emphasis added).

As evidenced by the outsized jury verdict, the jury may well have awarded damages and wrongly punished Defendants, as Plaintiff's counsel improperly encouraged, for Plaintiff's decision to retire, or for the claimed constructive discharge or hostile environment and evidence relating to only those claims. Moreover, in evaluating the weight of the evidence, the Court must

17

exclude evidence relevant only to the dismissed constructive discharge or hostile environment claims. Particularly viewed in that light, the weight of the evidence does not support the verdict.

### D.   **Plaintiff Improperly Confused The Jury About The CBA.**

Plaintiff also improperly offered testimony and argument about the collective bargaining agreement (the "CBA") to rebut Defendants' claim that Verizon was entitled to exercise business judgment (instead of seniority) in assigning employees to Fire Island, and thus could consider policy infractions and issues of trust without formal discipline. This case involved an intra-area reassignment, not an "inter-area" transfer, as Plaintiff himself admitted. (Tr. 824:5-8). Yet Plaintiff was permitted to read the wrong CBA article ("Inter-Area Transfers") to the jury over Defendants' objection, and was not competent to testify about it. (Tr. 793-803). Nonetheless, in summation Plaintiff's counsel improperly argued about that wrong CBA article, maintaining Verizon "had a process that was supposed to be followed," referring to seniority. (Tr. 1209:24-1210:7; 1268:9-13). But that CBA provision did not apply. Plaintiff argued Defendants' invocation of the business judgment rule was pretextual. The jury may well have erroneously concluded Defendants discriminated and should be punished because they improperly disregarded the seniority rule of the CBA, when in fact it did not apply and Defendants were entitled to exercise business judgment.

### V.   **THE JURY'S DAMAGES AWARDS CANNOT STAND.**

The Court should vacate the lost overtime, emotional distress and punitive damages awards because there is no legally sufficient evidentiary basis for a reasonable jury to have awarded Plaintiff either compensatory or punitive damages. In the alternative, it is well established that the trial judge has "discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence," and that "[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Lore v. City of Syracuse*, 670 F.3d 127, 176-77 (2d Cir. 2012)

(internal quotation marks and citation omitted). If the Court concludes that a remittitur is warranted, then it must offer the plaintiff an option between accepting the remittitur or submitting to a new trial. *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995).

Based on the evidence at trial, the size of the overtime and emotional distress damages awards was excessive and motivated by inappropriate considerations rather than any actual evidence of harm. Further, the punitive damages are excessive under the standards set forth by the Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) and its progeny.

### A.  **The Award For Lost Overtime Has No Rational Basis.**

As set forth in Point I(A)(1), *supra*, there is no legally sufficient evidentiary basis to find that Plaintiff lost any overtime from his reassignment or the alleged retaliation. Moreover, there was no competent evidence regarding any overtime number and the jury's award of $55,000 is against the weight of the evidence and thus excessive. The jury award was improper conjecture.

### B.  **The Emotional Distress Award Should Be Vacated Or Substantially Reduced.**

There was no legally sufficient evidentiary basis for a reasonable jury to award Plaintiff any emotional distress damages based on his reassignment or the alleged retaliation. The notion that Plaintiff's claimed emotional distress followed from his loss of opportunity for overtime when he had no interest in overtime is implausible at best. The emotional distress Plaintiff claimed is at most tied to Plaintiff's dismissed claims for hostile work environment and constructive discharge. Plaintiff made no effort (and is not able on this record) to connect any symptoms of emotional distress to his reassignment or the alleged retaliation. (Ex. N, O).

In any event, the award of $750,000 in compensatory damages for emotional distress is wildly excessive. Emotional distress awards are grouped into three categories: garden variety, significant and egregious. *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 714 (E.D.N.Y. 2015). Garden variety awards generally merit $30,000 to $125,000, although courts have reduced garden

variety awards to as low as $10,000. *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018). Significant emotional distress is found where there is medical, psychological, or therapist evidence of substantial, long-term psychological harm. *Id*. at 320-21. Usually, the top range for significant emotional distress is $200,000. *Id*. at 320 (citing *Emamian v. Rockefeller Univ.*, No. 07 Civ. 3919 (DAB), 2018 WL 2849700, at *15 (S.D.N.Y. June 8, 2018) (collecting cases)). However, "significant" distress awards can be reduced to $50,000, if not less. *Rainone v. Potter*, 388 F. Supp. 2d 120, 126 (E.D.N.Y. 2005) (remitting "significant" emotional distress award of $175,000 to $50,000). Egregious emotional distress, which is manifestly not an issue here, involves extreme conduct or a significant impact on the physical health of the plaintiff. *Id*. This would include, for example, years of racial insults, intimidation, and degradation resulting in multiple hospitalizations, and long-term harm. *Duarte,* 341 F. Supp. 3d at 320.

Here, Plaintiff's claim is best characterized as a "garden variety" emotional distress claim. Although he offered medical testimony, he did not need any treatment for years before the trial started. (Tr. 783:17-784:13). His disability claim was denied and his appeal, after an independent medical examination, was also unsuccessful. Further the kind of symptoms described by his physician fall within garden variety symptoms. (Tr. 844:21-845:7; 850:20-25; 858:24-859:6).

The *Rainone* case, in which Judge Spatt reduced an award for emotional distress from $175,000 to $50,000, is instructive. In that case, the plaintiff supported his claim of emotional distress damages with testimony from his treating psychologist. 388 F. Supp. 2d at 124-26. Because of the emotional distress he experienced after not being selected for a promotion, the plaintiff took six months of medical leave, and his psychologist diagnosed him as having major depression. *Id*. However, the plaintiff's depression was not permanent, his symptoms decreased and he discontinued seeing his psychologist. *Id*. at 126. Based on this record, Judge Spatt found

that the jury award for $175,000 for emotional distress "shocks the conscience of the Court" and remitted the award to $50,000. Plaintiff's alleged symptoms and evidence are strongly similar to those presented in *Rainone*. Here, Plaintiff also took approximately six months off work due to his alleged depression, but recovered sufficiently to no longer need treatment. Similarly, the jury award here of emotional distress of $750,000 shocks the conscience.

### C.   The Punitive Damages Issue Should Not Have Been Submitted To The Jury.

No reasonable jury could have found Plaintiff was entitled to an award of punitive damages. Plaintiff must prove that punitive damages are necessary before they are awarded, but failed to do so. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("It should be *presumed* a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability … is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.") (emphasis added).

Moreover, punitive damages in employment discrimination actions are only appropriate when the employer has engaged in intentional discrimination and has done so with malice or reckless indifference to the rights of an aggrieved individual.[14] Here, there was no malicious or reckless conduct sufficient to warrant punishment in the form of punitive damages. At most, even accepting Plaintiff's version, Plaintiff was the subject of intra-area reassignment that resulted in the perceived loss of some overtime pay, and the failure to reverse the reassignment. The jury found that Bolger, the decision-maker regarding Plaintiff's transfer, did not discriminate. Further, the Court found Defendants' conduct not "objectively intolerable" and there was nothing "severe

---

[14] *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999) (Congress established a higher standard for punitive damages); *Farias v. Instructional Sys., Inc.*, 259 F. 3d 91, 101 (2d Cir. 2001) (limiting punitive damages "to cases in which the employer has engaged in intentional discrimination and has done so with 'malice or with reckless indifference to the federally protected rights of an aggrieved individual'…. A 'positive element of conscious wrongdoing' is required for an award of punitive damages") (internal citations omitted).

or pervasive" in the record (Tr. 1131:5-7; 1135:17), and the Court dismissed the constructive discharge and hostile environment claims. Because there was no "severe or pervasive" conduct in the record, there is no basis for finding anything was done with "malice or reckless" indifference.

### D.   The Punitive Damages Question To The Jury Constituted Plain Error.

In employment discrimination cases, the NYSHRL does not authorize punitive damages. N.Y. Exec. Law § 297(9). Thus, including "the New York law" in the jury question regarding punitive damages was plain error, requiring the award to be vacated.[15] (Ex. P, Question 11).

This error was compounded by the fact that the jury questions regarding punitive damages—both with respect to entitlement and amount—did not differentiate among Defendants or claims.[16] It is impossible to determine which Defendants the jury awarded punitive damages against and for how much. Punitive damages are not joint and several, at least as between the individual Defendants, and the jury should have been required to make a finding of wrongful state of mind for each Defendant. Given that punitive damages are designed to punish and deter, they must be determined individually and calibrated to each Defendant's culpability and circumstances. Further, if the punitive damages were related to New York law they were impermissible; if related to Title VII, no individual Defendant would be liable and Verizon's liability capped at $300,000.

The error of the combined punitive damages question was further compounded as to the individual Defendants because they were differently situated regarding the evidence and the claims against them. *Gagnon v. Ball*, 696 F.2d 17, 19 n. 2 (2d Cir. 1982) ("[p]unitive damages . . . are properly assessed separately against individual defendants"). The jury held Lucas liable for

---

[15] Plaintiff's total compensatory and punitive damages award under Title VII is capped at $300,000. 42 U.S.C. § 1981a(b)(3)(D). Failing to differentiate between the amount of punitive damages allocated to Title VII in the jury question was also plain error.

[16] Defendants had asked for an itemized damages award in their proposed verdict sheet. (Ex. Q).

discriminatory conduct under New York law (Verdict Form, Question 4), but not federal law (Question 3). Punitive damages, however, are not available under the NYSHRL. While the jury held Lucas liable for retaliation under Section 1981 (Question 6), it is far more likely that if the jury intended to award punitive damages against Lucas, it did so for discriminatory conduct, not retaliation.[17] Francis, by contrast, was held liable for discriminatory conduct under § 1981, but he was not on the verdict sheet for the NYSHRL claim or for retaliation. Thus, if the punitive damages were for discriminatory conduct under § 1981, they could not include Lucas, and if they were for retaliatory conduct, they could not include Francis. The undifferentiated verdict makes it impossible to determine what the jury intended.[18]

Finally, as shown in Point IV(B), Plaintiff's counsel improperly inflamed the jury and encouraged punishment of Defendants for their counsel's trial strategy. The conduct of trial counsel cannot constitute a proper basis for punitive damages. *See FDIC*, 755 F. Supp. at 1329.

### E.    The Punitive Damages Award Was Excessive.

Whether a punitive damages award is constitutionally excessive is judged according to three factors: (1) degree of reprehensibility of the defendant's conduct; (2) the proportion of punitive damages to compensatory damages; and (3) the difference between the punitive damage remedy and civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 574-75.

With respect to the degree of reprehensibility, a finding of liability alone does not justify an excessive punitive damages award; the conduct must be sufficiently reprehensible as judged by

---

[17] Indeed, Plaintiff testified that he never saw Lucas again after returning to the mainland, Lucas was no longer his supervisor and there is no evidence that Lucas had anything to do with not sending Plaintiff back to Fire Island.

[18] *Campen v. Greenamyer*, No. 89-56050, 1991 U.S. App. LEXIS 18370, *8-9 (9th Cir. Aug. 5, 1991) (trial judge erred by submitting a general verdict form to jury where punitive damages were available on only one of the three causes of action (i.e. common law fraud), as "[t]he jury verdicts did not indicate the basis for the punitive damage awards," and the judge failed to instruct the jury "as to which theories would support an award of punitive damages").

a number of factors to warrant punitive damages. *Id*. at 580. Accordingly, "[c]ases upholding punitive damage awards of $200,000 or more generally involved discriminatory or retaliatory termination resulting in serve financial vulnerability to plaintiff, repeated incidents of misconduct over a significant period of time, repeated failures to address complaints of discrimination, and/or deceit." *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 566 (S.D.N.Y 2012). Violence or the threat of violence is frequently cited as a justification for a higher punitive damages award. *Id*. at 565. Further, whether the defendant's conduct resulted in physical injury to the plaintiff, evidenced indifference to reckless disregard for the health or safety of others, or established a "'pattern of discrimination' that extended to other employees in his protected group" has also been considered by courts. *Id*. at 566 (citation omitted); *see Duarte*, 341 F. Supp. at 328.

The second *Gore* factor is the ratio of compensatory to punitive damages. In this regard, courts in this Circuit have found a 2:1 ratio of punitive damages as the maximum allowable in an employment discrimination case and have often found a ratio of 1:1 or less appropriate, based on facts involving more egregious and malicious violations than those presented here.[19]

In the recent decision in *Duarte*, the district court surveyed punitive damages awards in race, sex discrimination and retaliation cases.[20] Based on this survey, and applying the other *Gore*

---

[19] *Shulka v. Sharma*, No. 07 Civ. 2972 (CBA), 2012 WL 481796, at *15 (E.D.N.Y. Feb. 14, 2012) (remitting punitive damages award for forced labor and trafficking from 2:5 to 1:1); *Allam v. Meyers*, 906 F. Supp. 2d 274 (S.D.N.Y. 2012) (reducing punitive award from $300,000 to $200,000 to set a 1:1 ratio where husband found liable for assault, battery, and intentional infliction of emotional distress against wife for domestic violence); *Kim v. Dial Serv. Int'l, Inc.*, 1997 WL 458783, at *16 (S.D.N.Y. Aug. 11, 1997) (reducing punitive damages award to establish 1:1 ratio in a race discrimination case); *see also Duarte*, 341 F. Supp. 3d at 331-32 (2:1 ratio maximum allowable and "A lower ratio is 'particularly' appropriate 'where the underlying compensation is, as it is in this case, for intangible – and therefore immeasurable – emotional damages,' because '[i]mposing extensive punitive damages on top of such an award stacks one attempt to monetize highly offensive behavior, which effort is necessarily to some extent visceral, upon another.'").

[20] 341 F. Supp. 3d at 332 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 148-49 (2d Cir. 2011) (in race discrimination and retaliation case, affirming remittitur of $1.6 million punitive damage

factors, the district court in *Duarte* remitted a punitive damage award in a disability discrimination action from $750,000 to $125,000, a 1:1 ratio to the remitted compensatory damages award.

Here, an application of the *Gore* factors requires a reduction of the punitive damages award to substantially less than $100,000. There is no evidence whatsoever of the kind of reprehensible conduct that could justify a larger award. Plaintiff was not subject to violence, the threat of violence, or repeated racial insults. Instead, Plaintiff was subject to an intra-area reassignment which at most cost him an opportunity for overtime. In the Second Circuit, the conduct at issue in this action, even if punishable, could at most justify a punitive damages award at a 1:1 ratio with the compensatory damages award (which should be substantially less than $100,000). Finally, as demonstrated by the survey of cases in the recent *Duarte* decision, comparable cases have resulted in punitive damages awards of between $25,000 and $190,000, with this action being more analogous to cases on the low end of that spectrum. *Duarte*, 341 F. Supp. 3d at 332.

---

award to $190,000, lower than compensatory damages, because plaintiff suffered no physical injury, and no evidence of indifference to health and safety of others); *Caravantes v. 53rd St. Partners,* 2012 WL 3631276, at *26 (S.D.N.Y. Aug. 23, 2012) (in sexual harassment case, $150,000 compensatory damages for pain and suffering and $40,000 in punitive damages); *MacMillan*, 873 F. Supp. 2d at 569 (in race discrimination case, after remitting compensatory damage award from $125,000 to $30,000, remitting $1 million punitive damage award to $100,000 despite repeated conduct, because no physical injury and no indifference or reckless disregard for health and safety); *Chisholm v. Memorial Sloan Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (remitting $1 million punitive award to $50,000 in retaliation case where conduct did not involve violence, threats, racial slurs or offensive language, a ratio under 1:1 to compensatory damages); *DeCurtis v. Upward Bound Int'l, Inc.*, 2011 WL 4549412, at *5 (S.D.N.Y. Sept, 27, 2011) (awarding $100,000 in compensatory and $75,000 in punitive damages for sex discrimination and retaliation claims, where supervisor repeatedly touched plaintiff in sexual manner without consent); *Norris v. N.Y.C. Coll. of Tech.*, 2009 WL 82556, at *7 (E.D.N.Y. Jan. 14, 2009) (remitting $425,000 punitive damage award to $25,000, one-third of compensatory damages award, where no violence or threat of violence, and no repeated misconduct)).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 and conditionally order a new trial or enter a conditional order of remittitur pursuant to Federal Rule of Civil Procedure 59.

Dated: New York, New York
        May 2, 2019


GREENBERG TRAURIG, LLP                SEYFARTH SHAW LLP


By:_____*/s/ Alan Mansfield*_____   By:_____*/s/ Howard M. Wexler*_____
        Alan Mansfield                        Howard M. Wexler
        Stephen L. Saxl                       Paul H. Galligan
        William Wargo                         Meredith-Anne M. Berger
    200 Park Avenue                       620 Eighth Avenue
    New York, NY 10166                    New York, NY 10018
    Tel.: (212) 801-9200                 Tel.: (212) 218-5500
    Fax: (212) 801-6400                  Fax: (212) 218-5526
    mansfielda@gtlaw.com                 hwexler@seyfarth.com
    saxls@gtlaw.com                      pgalligan@seyfarth.com
    wargow@gtlaw.com                     mberger@seyfarth.com